Toledo, St. Louis and New Orleans R. R. Co. *et al.*

*v.*

St. Louis and Ohio River Railroad Co. *et al.*

*Opinion filed April 20, 1904.*

1. EQUITY—*equity will not lend its aid to enforce forfeiture for breach of condition subsequent.* A court of equity will not lend its aid to enforce a forfeiture of the grantee's rights under a deed for breach of a condition subsequent.

2. SAME—*when equity is without jurisdiction to entertain bill to remove cloud.* A court of equity is without jurisdiction to hear and determine a proceeding to remove a cloud from title where the lands in controversy are in possession of the defendant, unless some other ground of equitable cognizance appears.

3. SAME—*what does not authorize interference of equity.* Unproved allegations of a bill which constitute the only ground for sustaining the jurisdiction of a court of equity do not authorize granting of relief upon such parts of the bill as, standing alone, are not of equitable cognizance.

4. SAME—*when injunction will not lie.* Injunction will not lie at the suit of one railroad company to restrain another railroad company from constructing a railroad upon land in its possession and which it claims by deed, where the only purpose of the bill is to have a court of equity determine the ownership and possession.

5. SAME—*when objection of adequate remedy at law need not be raised by answer.* The objection of adequate remedy at law may be taken advantage of though not made by the answer, where the allegations of the bill make a case for equitable cognizance but are not sustained by the proof on the hearing.

6. INJUNCTION—*when allowance of damages on dissolution of temporary injunction is proper.* The fees and expenses of solicitors in ob-

taining the dissolution of a temporary injunction against a railroad company are properly allowed as damages, although the solicitors were employed by another railroad company which had succeeded to the defendant's rights and under the latter's charter was engaged in constructing the road.

7. SAME—*what not a defense to suggestion of damages.* Alleged violation by the defendant of a temporary injunction is not a defense to his suggestion of damages, in the same suit, on dissolution of such injunction.

APPEAL from the Circuit Court of Pope county; the Hon. W. W. DUNCAN, Judge, presiding.

This is an appeal from a decree of the circuit court of Pope county dismissing a bill for an injunction which had been filed by the appellant railroad company and Jacob W. Michell, and assessing damages against appellants for the wrongful suing out of the injunction writ. The bill was on January 5, 1903, presented to the master in chancery of Pope county, who on the same day ordered a temporary injunction to issue, which was served on appellees January 6, 1903. An answer was filed to this bill, but the transcript does not show the date of filing. On January 17, 1903, appellees applied to Hon. A. K. Vickers, one of the judges of the first judicial circuit, for a dissolution of the injunction. The cause was continued to the twenty-third day of the same month, at which time a hearing was had upon the pleadings and affidavits filed by the respective parties, and the motion for a dissolution of the injunction was taken under advisement until January 27. On the latter date the judge ordered the temporary injunction dissolved. On April 18, 1903, appellants filed an amended bill. Appellees answered the amended bill, and appellants replied to the answer. Appellees also filed suggestions of damages. The cause then proceeded to a hearing before the court and resulted in the decree above mentioned.

The evidence shows that the St. Louis and Ohio River Railroad Company, one of the appellees, was incorpo-

rated on June 18, 1900, under the name of Chicago, St. Louis and Ohio River Railroad Company, for the purpose of constructing a railroad from a point on the Ohio river at or near Golconda, in Pope county, to a point on the Chicago and Eastern Illinois railway in Johnson county. This latter terminal was afterwards changed to a point on the Illinois Central railroad in Johnson county. The name was also changed to St. Louis and Ohio River Railroad Company. The appellant company was incorporated on March 18, 1902, for the purpose of constructing a railroad from a point in Shelby county to a point on the Ohio river in Massac county.

North of Golconda, in Pope county, a high bluff extends up the Ohio river for a distance of about two miles, and between this bluff and the river is a narrow pass. Appellant Jacob W. Michell was, prior to July 1, 1901, the owner of two adjoining tracts of land, the south tract containing fifty-eight and three-fourths acres and the north tract sixteen acres, both tracts having the Ohio river as the eastern boundary line. This pass constituted the eastern portion of each of these two tracts, extending from the south line of section 18, town 13, south, range 7, east, to the north line of the sixteen-acre tract. About eight hundred feet south of the north line of the latter tract, and in the pass, was a large rock, designated in the pleadings and by the witnesses as the "big rock."

The plan of the appellee railroad company, in constructing its system, included the building of a branch line from Golconda and an incline track to the river, by means of which connection could be established with boats at some suitable point. With this object in view it surveyed a line north from Golconda, and proceeded to obtain the right of way along the route surveyed. Adopting a point on the line which was denominated zero, as the survey proceeded stakes were placed at intervals of one hundred feet and numbered with minus numbers, the first stake north of the zero point being

designated "*minus 1*," and each stake to the north being given the next higher minus number than the one immediately south of it.

Prior to July 1, 1901, the appellee railroad company had surveyed and set stakes through the pass referred to, up the Ohio river, to a point near the big rock on the Michell land, at which point a stake was set, marked "*minus 74*." On the latter date the appellee company procured from Jacob W. Michell a warranty deed for a right of way over that portion of the two tracts of land above mentioned which constituted the pass, described as follows: "From the point where the center line of said railroad, as now located and staked out for a part of the distance across said land, crosses the south line of fractional section 18, town 13, south, range 7, east of the third principal meridian, to a point eleven hundred and thirty feet northwardly from the first said point, a strip of land one hundred feet in width on the westerly side of said center line, and on the easterly side of said center line a strip of varying width, extending from said center line to the Ohio river; and from the aforesaid point eleven hundred and thirty feet northwardly from the south line of said section 18 to a point in the north line of the south part of fractional north-east quarter section 18, a strip of land one hundred feet in width on the westerly side and seventy-five feet in width on the easterly side of the center line of said railroad as the same is now located and staked out for a part of the distance and as it may hereafter be staked out for the remainder of the distance across said land." The deed then proceeds: "Also the right to construct, operate and maintain a railroad upon the said strip of land, wherever the same may be surveyed and located upon the said tracts of land by the grantee herein, its successors and assigns, and to have, hold and use the land extending fifty feet on either side of the meridian line of the said railroad for all the uses and purposes of a railroad right of way." It also con-

tains the following condition:   "This deed is to be null
and void unless the grantee, its successors or assigns,
shall construct said railroad by the first day of January,
A. D. 1903."   The deed was acknowledged by Jacob W.
Michell and wife on August 17, 1901, and was recorded
on February 1, 1902.   At the time it was executed the
appellee railroad company had made no survey and had
established no line north of the stake marked *"minus 74."*

The appellant company desiring to use the pass in
question for its railroad, on July 26, 1902, obtained from
Jacob W. Michell and wife a quit-claim deed for a right
of way over the two tracts of land in question, described
as follows:   "A piece of land one hundred feet in width,
and as many more feet in width as may be required for
the excavations and embankments, and for material for
embankments, for so much of said railway as may pass
through the following described land, to-wit:   The south
part fractional north-east quarter section 18, sixteen
acres, and also the fractional south-east quarter section
18, fifty-eight and three-fourths acres.   This last being
granted over said land west of the right of way hereto-
fore granted to the Chicago, St. Louis and Ohio River
Railroad Company, across part or all of said land in said
last description, all in the county of Pope and State of
Illinois."   This deed was acknowledged and filed for
record on the same day it was executed.   During the lat-
ter part of September or the first part of October, 1902,
the appellant company surveyed a line through the pass,
and set stakes along the proposed route from the north
end to the south end of the Michell land.

On December 13, 1902, the appellee company surveyed
and located its line from the stake marked *"minus 74"* to
the north line of the Michell land, but did not have its
road constructed on the land in question by January 1,
1903.   It did, however, have a line constructed and trains
running over that part of its system between Reeves-
ville, on the line of the Illinois Central, in Johnson

county, and Golconda, by that date, and had sixty or seventy per cent of its construction work done on the Michell land.

On January 3, 1903, Michell and his wife executed a warranty deed to the appellant company, conveying to it the following described real estate: "Beginning at a point where the center line of the Toledo, St. Louis and New Orleans railroad, as now staked out, crosses the south line of fractional section 18, town 13, south, range 7, east of the third principal meridian, said point being about one hundred and forty-five feet west of the north-east corner of Jacob D. Rauchfuss' land; thence west along said section line to a point thirty feet distant, measured at right angles to said center line of railroad; thence northwardly to a point in the north line of a sixteen-acre tract of land owned by said Michell in the south part of fractional north-east quarter section 18, said point being about one hundred and ten feet west of the crossing of the north line of above described sixteen-acre tract and the center line of Toledo, St. Louis and New Orleans railroad as now staked out; thence east along said north line of sixteen-acre tract to the Ohio river; thence in a southerly direction, following meanderings of the said river, to the south line of section 18; thence west along said section line to the place of beginning; all in the county of Pope and State of Illinois, as shown by the plat hereto attached." The description in this deed includes the right of way granted to the appellee railroad company by the deed of July 1, 1901, and this deed was filed for record on the same day it was executed.

The appellee railroad company had not constructed its railroad over the Michell land by January 5, 1903, but its servants, together with the servants of the McArthur Bros. Company, which latter company had the contract to clear off and grade the right of way for the appellee railroad company, were proceeding with the construction of the railroad on the land described in the deed of

January 3, 1903, to the appellant company, and were pulling up the stakes set by the latter company, when the temporary injunction issued, and the following day it was served on both of the appellee companies and their servants, restraining them from interfering, meddling with or possessing the real estate in question, and from interfering with the appellant company in its work upon said land. Appellants charge that appellees disregarded the injunction writ and proceeded with the construction of the road after it had been served and before it was dissolved, doing part of the work at night. Appellees deny any violation of the writ.

It appears from the evidence that the Illinois Central Railroad Company was constructing this road for and by authority of the appellee railroad company. The McArthur Bros. Company was paid by the former railroad company, as were also the men who made the survey and supervised the work of construction. The suggestion of damages filed by the McArthur Bros. Company was disallowed. Damages to the amount of $621.40 were allowed to the appellee railroad company on account of solicitors'. fees and expenses.. The evidence of these solicitors shows that they were employed and paid by the Illinois Central Railroad Company, and that they had made no charge against and had received no money from the St. Louis and Ohio River Railroad Company.

The grounds urged by appellants in this court for a reversal of the decree are, first, that the condition contained in the deed of July 1, 1901, to the effect that the deed should be void if the road was not constructed by January 1, 1903, was broken by the grantee, and that the conveyance by Michell to the appellant company on January 3, 1903, was a sufficient re-entry on the part of Michell to divest the appellee railroad company of all right and title it had obtained by virtue of the deed to it; second, that said deed of July 1, 1901, is void for uncertainty as far as it attempts to convey any land north

of the stake marked *"minus 74;"* third, that if the title
to the land north of the stake marked *"minus 74"* re-
mained in Michell until lines were located to which the
deeds could attach, the appellant company having first
surveyed a route had the better right to the land em-
braced in its survey; fourth, that the court erred in assess-
ing damages in favor of the appellee railroad company
for solicitors' fees, because the solicitors were employed
and paid by the Illinois Central Railroad Company, which
was not a party to this suit.

E. B. Green, D. G. Thompson, Theodore G. Risley,
and W. S. Phillips, for appellants.

W. W. Barr, and R. J. Stephens, (J. M. Dickinson,
of counsel,) for appellees.

Mr. Justice Scott delivered the opinion of the court:

*First*—It is sought by the amended bill herein to set
aside and annul the deed dated July 1, 1901, from Jacob
W. Michell and wife to the St. Louis and Ohio River
Railroad Company, hereinafter referred to as the Ohio
River company, on account of fraud and misrepresenta-
tion in procuring the same. The proof is not sufficient to
warrant relief on this ground, and counsel do not press
this question in this court.

*Second*—The amended bill prays that the deed of July
1, 1901, be set aside for the reason that the condition
subsequent therein contained, which is set out *verbatim*
in the foregoing statement of facts, was not complied
with by the grantee, and that as a consequence its right
to the real estate in question has been forfeited. In this
respect the complainants seek to enforce a forfeiture be-
cause of a breach of a condition subsequent in the deed.
A court of equity will not lend its aid for that purpose.
2 Story's Eq. Jur. sec. 1319; *Douglas* v. *Union Mutual Life
Ins. Co.* 127 Ill. 101.

*Third*—The amended bill also seeks to set aside and annul the deed of July 1, 1901, on the ground that prior to the filing of the bill herein the condition subsequent had been broken and the title had re-vested in Michell, and that he had on January 3, 1903, conveyed the real estate to appellant the Toledo, St. Louis and New Orleans Railroad Company, hereinafter referred to as the Toledo company, and that the said deed of July 1, 1901, is a cloud upon the title of the last named appellant and should be set aside for that reason. It is unnecessary to determine whether the condition had been complied with or whether the title of the grantee under the deed containing that condition had been divested. The condition was to be fulfilled by January 1, 1903. On that date, and for several days prior thereto, and from that time down to the time of the service of the temporary injunction herein, it conclusively appears from the testimony of all the witnesses in the case that appellees were in the possession of the strip of ground which the Ohio River company claims to own, by virtue of the deed which is alleged to be a cloud upon the title of the Toledo company, and had thereon a large force of men and teams and were engaged in constructing thereon a railroad grade.

A court of equity is without jurisdiction to hear and determine a bill to remove a cloud from the title to real estate where the lands in controversy are in the possession of the defendant to the bill unless some other ground of equitable cognizance appears. *Lundy* v. *Lundy*, 131 Ill. 138; *Glos* v. *Randolph*, 133 id. 197.

*Fourth*—The amended bill also prays for a permanent injunction restraining the defendants from interfering with the Toledo company's possession of a portion of the real estate which the Ohio River company claimed to hold under its deed from Michell, and from constructing thereon a road-bed and laying thereon a railroad track, and that if, before a final hearing, the defendants shall enter upon such real estate and construct thereon a rail-

road track they be restrained from removing the same therefrom, and that if they be in possession on a final hearing of the bill they be decreed to surrender the possession to the Toledo company, and that if it be found that the Ohio River company has any right or title to the land claimed as a right of way by the Toledo company it be decreed to release and quit-claim the same to the Toledo company on such terms as shall seem equitable. It is apparent that by this branch of the bill the only matter presented is the question, who is the owner of and entitled to the possession of the real estate which was in the possession of the Ohio River company? This is clearly a question for a court of law. It is only on the theory that a freehold was involved that an appeal could have been taken directly to this court.

The grounds hereinabove spoken of under the first, second and third divisions of this opinion are the only other grounds upon which the interference of a court of equity is invoked. Complainants' right to equitable relief on either of those three grounds fails for reasons hereinbefore stated.

While it is true that a court of equity which has jurisdiction of a cause by reason of the existence of some ground of equitable jurisdiction, for the purpose of doing complete justice between the parties, may, in addition to the equitable relief, afford relief of a character which in the first instance is only obtainable in a suit at law, still, to authorize relief of the latter character, some special and substantial ground of equitable jurisdiction must be alleged in the bill and proved upon the hearing. Mere statements in a bill upon which the chancery jurisdiction might be maintained but which are not proved will not authorize a decree upon such parts of the bill as, if standing alone, would not give the court jurisdiction. 12 Ency. of Pl. & Pr. p. 165; *Daniel* v. *Green*, 42 Ill. 471; *Logan* v. *Lucas*, 59 id. 237; *Gage* v. *Mayer*, 117 id. 632; *County of Cook* v. *Davis*, 143 id. 151.

It is apparent that upon this branch of the case nothing is involved except the possession and title to real estate. The Ohio River company was in possession claiming title in fee simple under its deed from Michell. The Toledo company claims to be the owner and entitled to the possession under its conveyances from Michell. The following language from *Daniel* v. *Green*, *supra*, is applicable: "To permit this bill to be maintained would be to hold that purely legal titles may be tried by a suit in chancery, instead of by an action of ejectment, in every case to recover lands adversely held. * * * Without the equity powers of the court have been brought into action by the main purpose of the bill the court will not try legal titles and decree the surrender of adverse possession. When it does so, it is only incident to its legitimate equity jurisdiction."

We are reminded that a court of equity will restrain, by injunction, the commission of trespasses to real estate which would result in irreparable injury to the owner. Authorities stating that doctrine are not applicable where, as here, defendant is in possession of the real estate claiming the same under a deed, and where the only acts which complainants seek to enjoin are the construction of a road-bed and laying a railroad track thereon, which is claimed to be an injury to the Toledo company, for the reason that the proposed road-bed is to be several feet lower than one which it desires to construct upon practically the same line. Such an injury, even if the Toledo company be the owner of the land over which the road is to be constructed, is one readily adjusted in a suit at law. This is not a bill for the purpose of preserving the real estate in its present condition and free from injury until the title thereto can be determined at law, but its purpose is to have a court of equity determine the ownership and right of possession.

Counsel for appellants state the gist of this controversy in the following language: "In the reign of Cæsar

Augustus all highways in the Roman empire led to Rome, and in the case at bar all other questions lead up to the important and controlling question, who was the owner of and had right to the strip of right of way in controversy at the time the original bill was filed?" The thoroughfare which leads to the solution of this problem passes through a court of law.

It is said, however, that as the answer to the amended bill does not state that complainants had an adequate remedy at law, appellees should not now be permitted to contend that a court of equity cannot in this case properly determine the title to this property, and in support of that proposition we are referred to *Monson* v. *Bragdon*, 159 Ill. 61, *Village of Vermont* v. *Miller*, 161 id. 210, and *Kaufman* v. *Wiener*, 169 id. 596. This doctrine must be accepted with the qualification found in the latter case, which is, "provided, of course, the subject matter of the litigation and the character of the relief are not foreign to the power of a court of equity." We think the subject matter of the litigation presented by this branch of the bill under consideration so foreign to the power of a court of equity as to bring this case within the quoted language. The bill, on its face, states a good cause of action, because it is alleged in apt words that the deed of the Ohio River company was obtained by fraud and misrepresentation. The lack of jurisdiction did not appear on the hearing until that question was disposed of. We think this rather falls within the class of cases discussed in *Richards* v. *Lake Shore and Michigan Southern Railway Co.* 124 Ill. 516, of which it is there said: "It is a fundamental principle that parties to a suit cannot, by consent, confer jurisdiction with respect to the subject matter of the suit, by stipulation or consent, for that is fixed by the law and is consequently beyond the control of the parties." Unless this be the correct view, parties may by agreement confer upon a court of equity the power to try suits, not only in ejectment, but in re-

plevin, trespass to the person and other matters equally foreign to the jurisdiction of that court.

An action of ejectment in a court of law must be resorted to where, as here, the parties desire to contest the validity of conflicting titles. "An action of ejectment cannot be tried in a court of equity by bill or cross-bill." *Gage* v. *Mayer, supra; Parker* v. *Shannon,* 114 Ill. 192.

*Fifth*—The damages awarded by the court below were for the fees and expenses of solicitors in securing a dissolution of the temporary injunction. Two objections are urged. The first is, that it appears from the record that these solicitors were not employed by either of the appellees, but were employed by the Illinois Central Railroad Company. This question does not seem to have been specifically presented to the court below, and the position of appellants now virtually is that the decree is not sustained by the evidence in this respect. It appears from the testimony, however, that the Illinois Central Railroad Company, prior to the beginning of this suit, had succeeded to the rights of the Ohio River company, and under the charter of the latter was engaged in doing the work on the Michell land; that the contractors and employees who constructed the road-bed and laid the track were contractors and employees in the service of and paid by the Illinois Central Railroad Company, and that the latter was in fact, under the law, the agent of the Ohio River company in constructing the line north of Golconda and across the Michell land. A person or corporation exercising the power conferred by charter upon another corporation is the servant of the latter. (*Lesher* v. *Wabash Navigation Co.* 14 Ill. 85; *Chicago, St. Paul and Fond du Lac Railroad Co.* v. *McCarthy,* 20 id. 385; *Pennsylvania Co.* v. *Ellett,* 132 id. 654.) Under the circumstances we think that the employment by the Illinois Central Railroad Company was employment by the Ohio River company.

It was also objected that no damages should have been allowed for the reason that appellees violated the temporary injunction. In the case of *Colcord* v. *Sylvester*, 66 Ill. 540, we held that this did not constitute a defense to an action at law on the injunction bond for wrongfully suing out the temporary injunction, and that while the parties enjoined who disobey the writ would be amenable to the action of the court as for a contempt, still their disobedience would not deprive them of their action on the bond to recover damages occasioned by the wrongful issuance of the injunction. Appellants insist that a different rule prevails where the defendant files his suggestion of damages and seeks to have an allowance in the same suit in which the injunction issued, for the reason that he who comes into equity must do so with clean hands. We are not impressed with this argument. The question is, are the damages recoverable by the defendant? It seems to be conceded that they would be recoverable in a suit at law on the injunction bond. We think if they can be so recovered they may be allowed by the chancellor upon suggestion.

Moreover, it does not certainly appear that the injunction was violated. The line of the Ohio River company follows its survey across the Michell land. The Toledo company had also surveyed a line across this land. Where the two lines of survey for the center lines of the tracks of the respective companies cross the south line of the Michell land they are seventy feet apart. They approach each other gradually as they go north. About fifteen hundred feet north, on the center line of the Ohio River company, a stake was driven, which is known in the litigation as "station *minus 74.*" From there on north the lines, still approaching each other, soon become so close together that the tracks of the two companies would occupy practically the same ground to a point eight hundred feet north of station *minus 74*, where the line of the Ohio River company terminates. The

temporary injunction restrained the defendants from operating on a strip of land extending entirely across the Michell real estate, and which is spoken of in this litigation as the "enjoined strip." At the south line of the Michell land the east line of this strip is thirty-five feet east of the line of the Toledo company, and continues north parallel with the line of the Toledo company, intersecting the center line of the Ohio River company at station *minus 74*. That portion of the road-bed of the Ohio River company which is north of station *minus 74* is in the enjoined strip, while that south thereof is outside the enjoined strip, practically speaking. The east line of the enjoined strip does not cross the tracks of the Ohio River company at right angles, but crosses them diagonally, and, as appears from the testimony of the witnesses, would cross the center line of the tracks at station *minus 74*. When the temporary injunction was served about sixty or seventy per cent of the work of construction on the Michell land had been done. Thereafter, and while the injunction was in force, a large amount of construction work was done and rails were laid on the Michell land. The evidence of appellees is, that this work was all done south of station *minus 74*, and not on the enjoined strip, except that on one occasion, by mistake, in blasting, the workmen got over the line and on the enjoined strip, and one shot was discharged there and the workmen were then taken off that strip. On the other hand, witnesses for appellants testified that work was done north of station *minus 74* on the road-bed of the Ohio River company while the injunction was in force. In this state of the evidence, and in the absence of any finding or decree by the court below on the subject, we are not disposed to hold there was a violation of the injunction.

The decree of the circuit court will be affirmed.

*Decree affirmed,*