### Clarence Ulrey et al. v. J. V. Poe et al.

1. LANDLORD AND TENANT—*character of oil and gas lease.* A lease authorizing exploration for gas and oil confers upon the lessee a title or right merely inchoate until oil or gas is actually found, when the right or title becomes vested.

2. LANDLORD AND TENANT—*when oil and gas lease valid.* An oil and gas lease providing for exploitation or exploration may be

valid notwithstanding its provisions are to a large extent optional
with respect to what the lessees shall do.

3. LANDLORD AND TENANT—*when surrender clause does not de-
stroy mutuality of lease.* Where a valuable consideration has
passed from the lessees to the lessor for the covenants contained in
a lease and where the covenants of the lease to be performed by the
lessees are in part executed, a provision in such lease by which the
lessees may, upon the payment of a certain consideration, cancel the
lease, does not render the same void for want of mutuality.

Bill in equity.  Appeal from the Circuit Court of Clark county;
the Hon. E. R. E. KIMBROUGH, Judge, presiding.  Heard in this
court at the November term, 1906.  Reversed with directions.
Opinion filed June 1, 1907.

GOLDEN, SCHOLFIELD & SCHOLFIELD, for appellants.

H. C. BELL and W. W. SHULER, for appellees.

MR. JUSTICE BAUME delivered the opinion of the
court.

This is a bill in equity by appellees against appel-
lants praying for the forfeiture and cancellation of a
certain oil and gas lease.  The lease is as follows:

"In consideration of the sum of one dollar, the re-
ceipt of which is hereby acknowledged, we, J. V. Poe
and wife, of Martinsville Township, Clark County,
Illinois, parties of the first part, hereby grant and
lease unto Clarence Ulrey, of Martinsville, Illinois,
party of the second part, all the oil and gas in and
under the following described premises, namely:  All
that lot of land situated in Martinsville Township,
Clark County, Illinois, described as follows, to wit: The
southwest quarter of the northeast quarter of Sec.
31, T. 10 N., R. 13, containing 40 acres; also the north
one-half of the southeast quarter of the northeast
quarter of Sec. 31, T. 10 N., R. 13, containing 20 acres;
also the south one-half of the Northeast quarter of the
northeast quarter of Sec. 31, T. 10 N., R. 13, contain-
ing 20 acres, in three descriptions containing 80 acres,
more or less, together with the right to enter thereon
at all times for the purpose of drilling and operating
for oil and gas, and to erect and maintain all build-

ings and structures, and lay pipes necessary for the production and transportation of oil and gas.

"To have and to hold the above described premises for the term of five years from the date hereof, and as much longer as oil or gas is found in paying quantities on said premises on the following conditions: Second parties shall within 12 months from date hereof drill to completion a test well upon said premises; if gas is found in sufficient quantities to transport, second parties agree to pay first parties the sum of one hundred dollars per year for the gas product of each well from which gas is transported, payable annually when a market is found for the gas, and first parties to have gas free of cost, to heat and light one dwelling house, to be transported at first parties' cost. If oil be found in paying quantities the first parties shall have the one-eighth part of all oil produced and saved from said premises to be delivered in the pipe line with which second parties connect their wells.

"The parties of the first part grant the further privileges to the parties of the second part the right-of-way over and across said premises to the place of operating, together with the exclusive right to lay pipes to convey oil and gas, the right to remove any machinery or fixtures placed on said premises; and the parties of the first part reserve the right to use and enjoy said premises for the purposes of tillage and all purposes not inconsistent with the objects and purposes above specified.

"The second parties to lay all pipes deep enough in the ground so as not to interfere with the cultivation of the soil.

"The second party hereby agrees to pay any damage done to growing crops by the laying of pipes, and to leave the tilling in as good order as same is found.

"In case no well is completed on said premises within 12 months from this date, the parties of the second part shall pay to parties of the first part as rental at the rate of one dollar per acre per year, to be paid quarterly at the close of the first quarter of each such rental year counting from the expiration of said 12 months.

Ulrey v. Poe.

"It is further agreed that in case no paying well is completed on said premises within five years from the date hereof this grant shall be null and void, without further agreement of the parties hereto.

"No well shall be drilled within 200 feet of any dwelling house or building without a written permit from the first parties.

"The second parties shall have the right to use sufficient gas and water to run all machinery for operating said wells, also the right to remove all its property at any time; but without interference with first parties' water supply.

"Upon abandonment by second party of the premises, or upon expiration of the rights and privileges of the second parties, under the provisions hereof, the second party agrees to execute full release to parties of first part.

"The parties of the second part hereby agree to complete one test well on this block of leases in Martinsville Township, Clark County, Illinois, on or before the first day of May, 1905, or forfeit all rights under this lease.

"It is understood between the parties to this agreement that all conditions, between the parties hereunto, shall extend to their heirs, executors, administrators and assigns.

"If said first well is found productive of either oil or gas, second parties further agree to continue with due diligence on this block of leases in Martinsville Township as long as paying wells are found.

"It is agreed that upon the payment of one dollar at any time by the parties of the second part, their successors or assigns, to the parties of the first part, their successors or assigns, said parties of the second part, their successors or assigns shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine and this lease shall become absolutely null and void.

"In witness whereof, the parties hereunto have set their hands and seals, this 28th day of January, 1905.

J. V. POE,          [SEAL.]
MARY E. POE,        [SEAL.]
CLARENCE ULREY.     [SEAL.]"

The bill alleges that the lease was filed for record in the recorder's office of Clark county; that it should be declared void as a cloud upon the title of appellees and should be set aside for want of mutuality and because it is unconscionable; that appellants have not taken possession of the premises thereunder; that no test well has been drilled by appellants upon the premises, and no sufficient test well has been drilled by appellants upon any of the premises designated therein by the words "this block of leases in Martinsville township;" that the said lease is unfair and unilateral, in that it is therein provided that the lessees shall have the right at any time, upon the payment of one dollar to the lessors, to surrender said lease for cancellation.

Appellants answered the bill admitting the execution of the lease and its transfer by Ulrey to The Illinois Oil & Gas Co., and denying that no sufficient test well has been drilled on the premises designated as "this block of leases." Further, the answer alleges that appellants tendered to appellees on April 27, 1906, the rental for the first quarter amounting to twenty dollars, and that the same was refused by appellees; that appellants have tendered to appellees the rentals as they fell due for the delay in drilling a well on the premises described in the lease, but appellees refused to accept the same. Upon the hearing before the chancellor a decree was entered declaring the lease null and void and setting aside and cancelling the same as a cloud upon the title of appellees, and directing appellants to deliver up said lease to be cancelled.

It is admitted by appellants that they have made no attempt to drill a test well on the premises belonging to appellees, described in the lease, and that they are in default as regards their covenant to drill to completion a test well on said premises within twelve months after the date of the lease, but it is insisted that such default has not operated to avoid the lease because they have tendered to appellees the stipulated

rental provided therein to be paid in the event that no test well was completed within twelve months from January 28, 1905. It is not controverted that appellants did tender to appellees the stipulated rent and that appellees refused to accept the same upon the ground, as stated by them, that "the lease was of no account." If the provision in the lease requiring the payment by appellants of one dollar per acre per year as rental, in the event of their failure to drill a test well to completion on the premises within twelve months, operated to prevent a forfeiture of their rights under the lease in that regard, it must be conceded that the tender and refusal of such rents, was effective to that end. Appellees having refused the tender of the stipulated rent cannot be heard to say that appellants are in default in that regard.

By one clause of the lease appellants agreed to complete one test well "on this block of leases in Martinsville township, Clark county, Illinois," on or before May 1, 1905, or forfeit all rights thereunder. Shortly prior to May 1, 1905, appellants undertook to drill a test well on land belonging to A. P. Keith, located in Martinsville township, south of appellees' land, and ceased their operations on May 1st, claiming to have then drilled a test well to completion. It is impossible satisfactorily to determine from the evidence the depth of the well drilled by appellants on the Keith land, the measurements of appellees' witnesses fixing its depth at 197 feet and those of appellants' witnesses fixing its depth at 295 feet. Whatever the depth of the well, the evidence tends to show that gas was found and that the well was equipped with tubing, casing and a packer; that the packer was put in the well to prevent the gas from escaping, there being no available market therefor. Thereafter, appellants drilled another test well on land belonging to John McNurland located in the same township, about 800 feet from the corner of appellees' land, but struck a flow of salt water, which, it is claimed, so intermingled with the

gas and oil as to destroy the value of the well. The contract of leasing does not specifically designate the lands included in the expression "this block of leases" whereupon appellants agreed to complete one test well on or before May 1, 1905, and if such well was found productive of either oil or gas to continue with due diligence as long as paying wells were found, but it is conceded that the Keith land was embraced within such designation and we think the evidence warrants the conclusion that the land of McNurland was also included within it.

The extent and character of the rights acquired by a lessee under an instrument such as is here involved, have never been passed upon by the court of review in this State, but the uniform holding of courts of last resort in other States, and of the Federal Court, where the question has arisen, is, that the title or right of a lessee is merely inchoate, and for the purpose of exploration only, until oil or gas is actually found, when it becomes vested. Gadbury v. Gas Co. (Ind.), 62 L. R. A. 895; Parish Fork Oil Co. v. Bridgewater Gas Co., 51 W. Va. 583; Ray v. W. P. Natural Gas Co., 138 Pa. 576; Kleppner v. Lemon, 176 Pa. 502; Huggins v. Daley, 99 Fed. 606; Federal Oil Co. v. Western Oil Co., 112 Fed. 373; Hawkins v. Pepper, 117 N. C. 407; Ohio Oil Co. v. Indiana, 177 U. S. 190. The vagrant, ambulatory character of the minerals, gas and oil, necessarily distinguish the rights of parties dealing with them from rights acquired with reference to coal, lead, iron and other minerals having a fixed *situs*. In McKnight v. Gas Co., 146 Pa. 185, it was said: "Oil leases must be construed with reference to the known characteristics of the business." In New American Oil & Mining Co. v. Troyer, 77 N. E. 739, the Supreme Court of Indiana said: "The peculiar wandering character of gas and oil precludes ownership in their natural state, and hence they are not the subjects of sale and conveyance until they have been reduced to possession and placed under control by

Ulrey v. Poe.

being diverted from their natural paths into artificial receptacles. In such cases the real subject of the contract is the mining of the gas, or oil, that may be found, on the terms specified. The preliminary exploring is a mere incident that goes for nothing if unsuccessful, and unless oil, or gas, is found in paying quantities, then there is and was not at the inception of the contract, anything to which it could attach. So the title in such contract is at least inchoate until the result of the drilling is ascertained. And if barren territory is developed then there is no lease, no continuing contract, no conveyance of title, because nothing to pass under the agreement. Added to this peculiarity is the custom of making such contracts greatly in advance of the demand for the product, the impracticability of drilling until lines of transportation approach within reasonable reach, the delays, in the beginning of operations, secured by the payment of a small sum, called rent, sometimes justifiable, and sometimes unreasonable, and, merely, for speculative purposes, the possibility, and occasional practice, of extracting the fluids from under lands through wells on the premises of another—the uncertainty of the discovery, the large profits sometimes realized, the heavy expense of drilling the test well, the total loss of labor and expense in case of failure, these and other like considerations have led courts, long before the making of the contract involved in this suit, to place oil and gas contracts, on account of the known characteristics of the business in a class of their own.''

There is no pretense in this case that the contract of leasing was procured by the fraud of appellants. The parties were capable of contracting and the contract must be held to express the intention and understanding of the parties, and, in the absence of some inherent infirmity, to be enforceable according to its terms.

Undoubtedly the primary purpose of appellees in executing the contract was to facilitate the exploration

of the premises for oil and gas and to enjoy the stipulated royalties and benefits to accrue to them from producing wells, but manifestly appellees did not contemplate a full realization of the purposes of the contract within any fixed and definite time short of the period of five years. The agreement on the part of appellants to complete a test well on the premises within twelve months from the date of the contract was not absolute, but optional with appellants, and the contract expressly recognizes the optional character of such agreement by providing for the payment by appellants of one dollar per acre per year, as rental for the premises, in the event that no test well was completed within twelve months. In this regard the agreement was upon a valuable consideration, and one which the parties had a perfect right to make.

Appellants having failed to complete a test well on the premises within twelve months, exercised their option to continue the lease by tendering to appellees the stipulated rent. The contract might have been more fair to appellees if it had required appellants to pay the stipulated rent quarterly in advance instead of at the close of the quarter, but such is the contract of the parties, and it comes far short of being unfair in the sense necessary to authorize a court of equity to interfere. At the most, appellees, upon the failure of appellants to pay the stipulated rent at the end of a quarter, could only be deprived of the use of the premises and their right to declare a forfeiture, for the period of three months. This in view of the fact that the territory is as yet largely undeveloped and without any immediate market for the product of the wells, or facilities for its storage or transportation, cannot result in any serious injury to appellees.

The so-called surrender clause in the contract is as follows:

"It is agreed that upon the payment of one dollar at any time by the parties of the second part, their successors or assigns, to the parties of the first part, their successors or assigns, said parties of the second part,

their successors or assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and terminate and this lease shall become absolutely null and void.''

In support of the decree of the Circuit Court it is urged on behalf of appellees that this clause renders the contract of leasing unilateral, and void for want of mutuality; that it creates a tenancy at the will of appellants, and being a tenancy at the will of one of the parties it necessarily becomes a tenancy at the will of both parties, and appellees having elected to terminate the tenancy, the contract was thereby ended.

The position assumed by appellees is not without authority, but the cases so holding, so far as they have come to our attention, are generally to be distinguished from the case at bar, in this, that no valuable consideration passed from the lessee to the lessor for the covenants in the lease, and the covenants to be performed by the lessee were wholly unexecuted. Some of the cases so holding are Eclipse Oil Co. v. So. Penn. Oil Co., 47 W. Va. 34; Huggins v. Daley, 99 Fed. 606; Tennessee Oil Co. v. Brown, 131 Fed. 696.

In Texas, where the consideration for such a lease was only one dollar and a promise to develop the premises and deliver to the lessor a stated per cent. of the oil produced and it was provided that the lessee might terminate the lease at any time and that the sum paid should be the lessor's compensation, it was held that the contract was unilateral and void. Roberts v. McFaddin, 74 S. W. Rep. 105.

In Lowther Oil Co. v. Guffey, 52 W. Va. 88, the lease expressed a consideration of one dollar, and the court in distinguishing the case from Eclipse Oil Co. v. So. Penn. Oil Co., *supra,* said: ''This lease is very different from the one passed on in the case of Eclipse Oil Co. v. South Penn. Oil Co., 47 W. Va. 84. While one dollar is a small consideration yet it is a valuable consideration and the court cannot say that it was

inadequate under the circumstances, as the lessors did not consider it so."

In Lowther v. Miller-Sibley Co., 53 W. Va. 501, where a similar lease was involved, it was said: "But when once a lessee under such a lease begins work, whilst he yet has no vested estate, still he has the right to go on in search of oil, and the lessor cannot then at mere will destroy his right."

In Pennsylvania leases containing similar clauses have been before the court, but it does not appear it has ever been insisted that such a clause operated to nullify such leases.

In New American Oil & Mining Co. v. Troyer (Indiana Sup. Ct.), 77 N. E. 739, where a lease contained a provision as follows: "Second party (lessee) may, at any time, reconvey his grant, and thereupon this instrument shall be null and void," it was held that no estate having vested in the lessee, the surrender clause did not operate to create a tenancy determinable at the will of the lessor.

In Brown v. Fowler (Ohio Sup. Ct.), 63 N. E. 76, a similar lease containing a surrender clause almost identical with the one in the case at bar was under consideration by the court, and it was held that the lease did not create a tenancy at the will of the lessor; that the term of two years was definite and certain and the surrender clause did not operate to destroy the two year term and make it a tenancy at will; that the term of two years and the surrender clause were not inconsistent; that the right to terminate the lease under the surrender clause was a valuable right for which the lessee had paid by paying the $1 mentioned as the consideration for the whole lease. Further, the court says: "Such options in contracts are sustained by courts. Thayer v. Allison, 109 Ill. 180; Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62. The error of construing a condition subsequent, or an option, as creating the term of the lease, when that has been created by the granting and *habendum*

clauses, has caused many decisions to be rendered whose soundness may well be doubted. This clause gives the lessee his option, and for which he has paid, to hold the lease to the end of the term, or surrender it sooner. It is always the right of a person holding an option for which he has paid to surrender it before the expiration of the time or to hold it for the full time; but the person who gave the option cannot compel a surrender before the expiration of the full time.

"It is also urged by counsel for defendants in error in both cases that the lease is void for want of mutuality. Granting that the lease was made for the purpose of operating thereon for oil and gas, and that an exclusive right to so operate was granted to the lessee, there is no want of mutuality. The lessee on his part paid $1, of which the lessor acknowledged receipt, and the lessor on his part made the demise; and because the lessee has performed his part in full, and does not promise to do anything further, it is claimed that there is no mutuality; the claim being that mutuality requires that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other. This is too narrow a definition of mutuality. One party may perform his part in full at the making of the contract, and thereafter have nothing to do or permit to be done, having already done his part, and the other party, in consideration of what has thus been done, binds himself to do or permit to be done something in behalf of the party who has thus fully performed. A promise to perform can be no stronger than performance itself, and, where one party promises to perform his part of a contract and the other performs his part at the making of the contract, both are bound, and there is mutuality. The one who has performed is bound to permit his performance to stand, and the one who has not performed is bound to perform on his part; so that both are mutually bound. Performance on part of one will sustain a promise to perform

on the part of the other. Where there is no performance and no promise to perform on one side, a promise to perform on the other side is without consideration and without mutuality, and such a contract can be held void on either or both grounds. In.this lease the lessee paid $1 for the lease for the exclusive right to operate for oil and gas, and thereby fully performed his side of the contract; and the lessor granted that right under the terms and conditions of the lease, and thereby a contract was made; and the party on one side received the $1 in full, and the party on the other side received the demise, and then both were mutually bound, and both had to trust to the future for the realization of the purpose for which. the lease was made. So that there is no want of mutuality, and in that respect the lease is valid.'' Upon this question this case is cited with approval in Venedocia Oil Co. v. Robinson, 71 Ohio St. 302.

In the case at bar the lease expresses a consideration of $1 paid by Ulrey to appellees, and as against appellant, The Illinois Oil & Gas Co., assignee of the lease for a valuable consideration, appellees cannot be heard to say that the consideration named was not in fact paid. Dill v. Fraze (Indiana Sup. Ct.), 79 N. E. 971.

The covenant in the lease requiring appellants to complete one test well on the block of leases in Martinsville township on or before May 1, 1905, being the only covenant on the part of appellants, a failure to perform which incurs a forfeiture by the express terms of the lease, has been executed by completing a test well on the Keith land, and we find nothing in the record which tends to impeach the good faith of appellants in the performance of that covenant.

The further covenant in the lease requiring appellants, in the event that the first well is found productive of either oil or gas, to continue with due diligence on that block of leases as long as paying wells were found, was evidently attempted to be complied

with by drilling a test well on the McNurland land, which proved to be abortive owing to the presence of salt water. A breach of this covenant, however, does not involve a forfeiture by the express terms of the lease.

The rule is well settled that forfeitures are not favored in equity and will rarely be enforced, but will yield to the principle of compensation. Ebert v. Arends, 190 Ill. 221. The undertaking on the part of appellants to "continue with due diligence on this block of leases in Martinsville township as long as paying wells are found," if in the nature of a condition subsequent, as appellees seem to insist, does not authorize a forfeiture for a failure on the part of appellants to perform, if there was such failure. It is well established that a court of equity will not lend its aid to enforce a forfeiture because of a breach of a condition subsequent. Douglas v. Ins. Co., 127 Ill. 101; T. St. L. & N. O. R. R. Co. v. R. R. Co., 208 Ill. 623. And this is so even where it is sought to remove a cloud on the title. Douglas v. Ins. Co., *supra.*

A careful consideration of the questions involved constrains us to hold that the decree is erroneous and that it should be reversed with directions to the court below to dismiss the bill for want of equity, which is done accordingly.

*Reversed with directions.*