THE GOLCONDA NORTHERN RAILWAY, Appellant, *vs.* THE GULF LINES CONNECTING RAILROAD OF ILLINOIS, Appellee.

*Opinion filed October 16, 1914—Rehearing denied Dec. 2, 1914.*

1. RAILROADS—*rule as to prior right to appropriation of land for railroad purposes.* As between two railroad companies the prior right to the appropriation of land for railroad purposes belongs to the company which first locates its line, and the first location belongs to the company which first defines and marks its route and adopts the same for its permanent location by authoritative action.

2. SAME—*location of line of railroad is the act of the company through its directors.* The location of the line of a railroad is the act of the company and can be made only by the board of directors, but the statute does not require the action of the board of directors to be in any particular form nor proved in any particular way.

3. SAME—*how location of line of railroad may be proved.* The location of a railroad is the selection and adoption of the particular line upon which the railroad is to be constructed, and may be proved by such acts of the officers and agents of the company, and other facts, as show that such line has been selected with the approval of the board of directors, and such approval may be shown by the circumstances of the case.

4. SAME—*recording of proper plat is prima facie evidence of location of railroad.* The filing of a plat in the recorder's office, showing the location of a railroad through the county, which plat is filed by the president of the railroad company and certified, under oath, by the president as a true map of the company's adopted, located line through the county, is *prima facie* evidence of the location of the road.

5. SAME—*non-compliance with condition subsequent in right of way deed does not determine estate.* Non-compliance by a railroad company with a condition subsequent in a right of way deed does not determine the estate, but such breach can only be taken

advantage of by the grantor, his heirs or his devisees, and there must be an entry after the breach, or some act equivalent thereto, in order to re-vest the estate in the grantor.

6. SAME—*third person cannot raise question of railroad company's power to sell its road.* Railroad corporations have power, under certain circumstances, to make sales and conveyances of real and personal property, and the question whether the company has exceeded its power in selling its located line, right of way, franchise and other property cannot be raised by another railroad company for the purpose of taking the right of way from the purchaser, as such question can be raised only by the State in a proper proceeding.

7. SAME—*what is not an abandonment of right of way.* The fact that a railroad company, finding itself unable to build its railroad within ten years from the filing of its articles of association, sells and conveys its located line, right of way and property to another railroad company does not amount to an abandonment of its right of way so long as the grantor or its grantee occupies it for railroad purposes, and such transfer gives no right to a third railroad company to appropriate such right of way and enjoin the grantee from using the same.

APPEAL from the Circuit Court of Pope county; the Hon. W. W. DUNCAN, Judge, presiding.

This case is a controversy between two railroad companies about the possession of a parcel of ground and the right to occupy it for the construction and operation of a railroad thereon. The ground is a narrow pass north of Golconda, in Pope county, which extends along the Ohio river between the river on one side and high rocky bluffs on the other. Each company claims the exclusive right to build a railroad through this pass, and on February 6, 1913, the Golconda Northern Railway, claiming to be in possession of the pass engaged in the construction of its railroad, filed a bill against the Gulf Lines Connecting Railroad of Illinois for an injunction to restrain the latter from interfering with, obstructing or hindering the former in the construction of its railroad through the pass. A preliminary injunction was allowed, an answer was filed, a motion to dissolve the injunction was overruled, and after a hear-

ing upon the pleadings and evidence the injunction granted was dissolved, the bill was dismissed for want of equity and a writ of restitution was awarded to the defendant, restoring it to the same possession of the premises as it had when the original bill was filed, so as to leave both parties in the same position as to the possession of the premises as they were when the suit was begun.. The complainant appealed, and by agreement of the parties an order was made for the preservation of the premises in the same condition until the final determination of the appeal.

The Toledo, St. Louis and New Orleans Railroad Company, to whose rights the appellee claims to have succeeded, was incorporated on March 18, 1902, for the. purpose of building a railroad from a point in Shelby county to a point on the Ohio river in Massac county, near Brookport. On July 23, 1909, it filed in the recorder's office of Pope county a map of its adopted, located lines through that county. Besides making a survey and marking this location it had procured many deeds for the right of way,. including conveyances from the owners of all the lands within the pass in controversy. During the summer of 1909 it cleared its right of way through the pass, to its full extent, of the heavy timber with which it was covered. This company did not complete the construction of any part of its railroad, and being unable to finish and put it in operation within ten years from the filing of its articles of association, as required by the Railroad Corporation act, on March 5, 1912, it executed two deeds purporting to convey all of its property, real and personal, including the right of way over the pass in question, to the appellee, the Gulf Lines Connecting Railroad of Illinois, which had been incorporated on January 22, 1912, for the purpose of building a railroad from a point in Vermilion county to a point on the Ohio river near Brookport. Immediately after the execution of these conveyances the appellee employed surveyors, who went upon the right of way, including the prem-

ises in question, and ascertained the old lines, finding most of the old stakes,—enough to follow the entire line and identify it. The right of way which had been cleared, though overgrown with four years' growth of timber and underbrush, was well defined. A detailed report of the character and cost of construction was made by the engineer and a contract was entered into for the construction work. On Monday, November 25, 1912, the appellee's engineer, with a party of assistants, was engaged in surveying, beginning at the north end of the pass, re-tracing the old lines, cross-sectioning and setting grade stakes for the construction force to go to work grading. This work continued throughout the week. On Friday night, November 29, the construction outfit, having been brought from Metropolis by boat, was unloaded on the premises in controversy, and from that time until the filing of the bill the work of grading and construction through the pass was actively prosecuted by the contractors.

The appellant was organized as a corporation on March 13, 1909, for the purpose of building a railroad from Golconda to a point on the Ohio river near Elizabethtown, in Hardin county. It surveyed and located its line through the pass in controversy, procured a part of the right of way, and in August, 1912, began the work of construction about a mile from the river north of the north end of the pass. About the first of October the appellant's construction force reached the river, and in November had arrived at the north end of the pass and was working there with teams. Between November 20 and 25 the appellant's engineer began surveying through the pass from the north and met the appellee's engineer engaged in the same work. On November 26 the appellant began to fence in the whole pass by attaching two wires to posts and trees along each side of the right of way, and by Saturday, November 30, completed this fencing. Guards were posted, and notices forbidding trespassing, signed by the appellant's president,

were put up. The appellee's surveyors were at work on the right of way during all of the time the appellant was stringing these wires around them. No attention was paid to the fencing or the notices, and during December, January and February each company had a force of men at work in the disputed territory, grading and laying ties and rails, and each interfered with the work of the other, throwing off the ties and rails and tearing down the grades of the other where they obstructed the work of the respective parties.

JAMES C. COURTNEY, and ROY R. HELM, (H. A. EVANS, GEORGE B. BAKER, and D. W. HELM, of counsel,) for appellant.

CHARLES DURFEE, JOHN W. BROWNING, C. L. V. MULKEY, and WHITNEL & BROWNING, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Counsel for the appellant advance three propositions as the basis of their claim that the decree should be reversed, viz.: First, that the appellant was in possession of the pass and the appellee entered upon and invaded its possession; second, that the appellant made the first location of its lines through the pass; and third, that it has the better title. We do not agree with any one of these propositions.

*First,* as to the possession. Prior to November 25 the appellant had been working on its grade north of the pass and had done some construction work down to the entrance of the pass at the north end, and possibly a little work within the pass at that end. Phelps' land was at the north end of the pass, and no attempt had been made to make a survey in the pass south of that land. At that time the appellant's engineer started in to survey south from the Phelps land and immediately met the surveying party of the appellee, which was engaged in cross-sectioning and

setting grade stakes on the line which had previously been surveyed and marked. The next day the president of the appellant, having been advised by his attorney that if he could get the right of way fenced before the appellee's construction outfit got there the attorney believed he could hold the right of way for the appellant, started a force of men to string two wires around the right of way. During the week the right of way was thus enclosed, the two forces of engineers of the appellant and the appellee all the time continuing their work on the land thus enclosed. This is all the work that appears to have been done by the appellant on the premises up to that time. It had no actual possession of any part of the premises, unless it was of a small part of the north end of the pass. It had not attempted elsewhere to exercise any dominion over the pass. The appellee, after the execution of the deeds to it on March 5, 1912, went upon the premises and made an examination of the line, preparing for the construction of the road, taking the grading cuts and fills, and making estimates for the construction. It actually did enter into a construction contract, and the appellant had learned that the construction company was coming with its outfit and for that reason undertook the fencing of the right of way. It is clear that the appellant had no prior or exclusive possession of the pass on November 29, when it is claimed the tortious entry was made by the appellee. It did not afterwards acquire possession, except of such parts as it was actually engaged in working on. The most that could be claimed for it was a joint occupation with the appellee in a contest for the possession. The evidence does not sustain the essential allegation of the appellant's bill that it was in the actual possession of the premises in controversy.

*Second,* the location. As between two railroad companies, the prior right to the appropriation of land for railroad purposes belongs to the company which first locates its line, and the first location belongs to that company which

first defines and marks its route and adopts the same for its permanent location by authoritative corporate action. (*Fayetteville Street Railway Co.* v. *Aberdeen and Rockfish Railroad Co.* 142 N. C. 423; *Williamsport and North Branch Railroad Co.* v. *Philadelphia and Erie Railroad Co.* 141 Pa. 407; *Chesapeake and Ohio Railroad Co.* v. *Deepwater Railway Co.* 57 W. Va. 641.) The location of the line of a railroad is the act of the company and can be made only by the board of directors. (*Black* v. *Chicago, Burlington and Quincy Railroad Co.* 243 Ill. 534; *East St. Louis, Columbia and Waterloo Railway Co.* v. *Illinois State Trust Co.* 248 id. 559.) It appears in the record that the appellant's board of directors, at a meeting held on December 6, 1909, adopted the location shown by its survey and map recorded in September, 1909. It is insisted that there is no evidence of a location made by the appellee. No record of any action taken by the board of directors of the appellee was shown and it is not claimed that any formal action locating its line was taken by them, but the appellee relies upon proof of a location made by its predecessor in title, the Toledo, St. Louis and New Orleans Railroad Company. Section 9 of chapter 109 of the Revised Statutes requires every railroad company to cause a plat of the location of its railroad to be made and recorded in the office of the recorder of deeds of the county in which the premises, or any part of them, are situated, within six months after said railroad is located. Such a plat was filed in the recorder's office of Pope county by the president of the Toledo, St. Louis and New Orleans Railroad Company. It was certified, under oath, by the president as a true map of the company's adopted, located line through Pope county, and we regard it as *prima facie* evidence, at least, of the location of the road. The company, through its agents and employees, was engaged, before and after the plat was filed, in obtaining deeds for the right of way on this line and they cleared off the timber along the line. It

does not appear whether the board of directors had ever voted for and adopted a formal resolution directing the location of the road on this line, but all the work done by the company consisted in procuring the right of way and doing work preliminary to construction along the line shown by the map attested by the president of the company. The statute does not require the actions of the board of directors in the location of a railroad to be in any particular form or proved in any particular way. The location is the selection and adoption of the particular line upon which the railroad is to be constructed, and may be proved by such acts of the officers and agents of the company and other facts as show that such line has been selected with the approval of the directors, and such approval may be shown by the circumstances of the case. The location indicated by the map of the Toledo, St. Louis and New Orleans Railroad Company was earlier in time than that of the appellant, but the appellant insists that the appellee is not entitled to the benefit of this location, and the question raised by this objection will be considered under the next head.

*Third,* the title. The Toledo, St. Louis and New Orleans Railroad Company, prior to the organization of the appellant, obtained from the owners deeds for the right of way over all the lands in the pass. Some of these deeds were subject to a condition subsequent for the building of the railroad by December 1, 1904. New deeds were later executed in place of these, in which the date of building was December 1, 1909. No entry was ever made by any of the grantors or their heirs for failure to comply with this condition and no attempt was ever made to declare a forfeiture. Some of the deeds were conveyances in fee simple. The deeds of March 5, 1912, from the Toledo, St. Louis and New Orleans Railroad Company to the Gulf Lines Connecting Railroad of Illinois purported to convey the located line for a railroad beginning at station 3985 of

the location survey, situated on Main street, East Carmi,
White county, Illinois, extending southerly through various
counties, including Pope, to a point on the Ohio river
near Brookport, in Massac county, including all rights of
way and the lands conveyed to the grantor company in
Pope county, including the land through the pass in controversy. This constitutes the appellee's title.

The appellant's title consists of the resolution of its
board of directors locating its line, and deeds from the
owners of the land through the pass in controversy, obtained subsequent to the deeds to the Toledo, St. Louis and
New Orleans Railroad Company. The validity of this title
depends upon the invalidity of the appellee's title, and the
appellant insists that the latter is void because of the expiration of the time limited for the building of the road
in some of the deeds to the Toledo, St. Louis and New
Orleans Railroad Company, because that company made no
location of its railroad, because the appellee has made no
location of its railroad, because the Toledo, St. Louis and
New Orleans Railroad Company had no power to convey
its right of way, located line, franchises and all its property to the appellee and the deeds by which it purported
to do so are void, and because the Toledo, St. Louis and
New Orleans Railroad Company having failed to complete
its railroad and put it in operation within ten years from
its incorporation and having abandoned its intention to
build a railroad, the property conveyed to it for that purpose reverted to the grantors and passed by their subsequent deeds to the appellant.

So far as the appellant's claim rests upon the failure
of the grantee to comply with the condition subsequent
for the building contained in some of the deeds it is of no
force. A court of equity will not lend its aid to enforce
a forfeiture because of a breach of a condition subsequent
in a deed. (*Toledo, St. Louis and New Orleans Railroad
Co.* v. *St. Louis and Ohio River Railroad Co.* 208 Ill.

623; *Douglas* v. *Union Mutual Life Ins. Co.* 127 id. 101; 2 Story's Eq. Jur. sec. 1319.) Moreover, a breach of a condition subsequent can be taken advantage of only by the grantor, his heirs or devisees. His grantees, whether be-. fore or after the breach, acquire no right to enforce a forfeiture. (*Waggoner* v. *Wabash Railroad Co.* 185 Ill. 154; *Boone* v. *Clark*, 129 id. 466; *Ruch* v. *City of Rock Island,* 97 U. S. 693; 2 Washburn on Real Prop.—6th ed.—secs. 954, 957.) Non-compliance with a condition subsequent does not, of itself, determine the estate. After breach, an entry, or some act equivalent thereto, is necessary to re-vest the estate in the grantor. *Mott* v. *Danville Seminary,* 129 Ill. 403; *Ruch* v. *City of Rock Island, supra;* 2 Washburn, *supra.*

We have held that the evidence justifies the conclusion that the Toledo, St. Louis and New Orleans Railroad Company had made a location of its road on July 23, 1909. The sale and conveyance of its located line, right of way, franchise and other property to the appellee, if valid, conveyed to the latter the prior right which the grantor had to construct a railroad on this located line. It is insisted, on behalf of the appellant, that the attempted conveyance to the appellee was contrary to public policy and beyond the power of the grantor, and was therefore void and of no effect whatever. A railroad corporation has not, as a general rule, the power to sell its road and franchise without statutory authority. The powers of all corporations are such, only, as are conferred by the statute under which they are organized, and a public service corporation cannot, without the assent of the State, sell or lease its entire property and franchise to another corporation and disable itself from performing the duties to the public imposed by its charter. (*Chicago Gas Light Co.* v. *People's Gas Light Co.* 121 Ill. 530; *Union Trust and Savings Bank* v. *Kinloch Telephone Co.* 258 id. 202; *Thomas* v. *West Jersey Railroad Co.* 101 U. S. 71; *Central Transportation Co.* v.

*Pullman's Palace Car Co.* 139 id. 24.) It would not, how-
ever, enable the appellant to maintain its bill even if we
were to hold the deed of the Toledo, St. Louis and New
Orleans Railroad Company to the appellee void. The only
effect of such holding would be to leave the title in the
former company, but it would not confer any right upon
the appellant or give to it any title or enable the grantors
of the Toledo, St. Louis and New Orleans Railroad Com-
pany to grant any title to the complainant. The fact that
because of its failure to finish the road and put it in oper-
ation within ten years from the time of filing its articles of
association section 26 of the Railroad and Warehouse act
declares that the corporate existence and powers of that
corporation should cease does not affect the question. The
State, alone, could take advantage of the failure of the
company in this regard, and until it did so no other person
could question its existence or the validity of its corporate
acts. *Ross* v. *Chicago, Burlington and Quincy Railroad Co.*
77 Ill. 127; *Chicago and Eastern Illinois Railroad Co.* v.
*Wright,* 153 id. 307.

Admitting that the conveyance by the Toledo, St. Louis
and New Orleans Railroad Company was beyond the cor-
porate powers of that corporation, the law does not permit
third persons having no interest in the corporation or its
trust to dispute the validity of its conveyance. The *ultra
vires* acts of the corporation may be objected to by the
State, the corporation, its stockholders or creditors, or the
persons with whom the *ultra vires* transactions are had, but
not by third persons having no interest in the subject mat-
ter. Railroad corporations have power, under certain cir-
cumstances, to make sales and conveyances of real and per-
sonal property. Whether any particular conveyance is in
excess of this power is a question which concerns only the
corporation itself, the State, or those persons having some
interest or title in the corporation or the property involved.
Where a corporation has power to hold real estate un-

der any circumstances or for any purpose, its title cannot be questioned by any person except the State. (*Hough v. Cook County Land Co.* 73 Ill. 23; *Barnes* v. *Suddard,* 117 id. 237; *Hamsher* v. *Hamsher,* 132 id. 273; *Cooney v. Booth Packing Co.* 169 id. 370; *Ehrman* v. *Union Central Life Ins. Co.* 35 Ohio St. 324.) A national bank is prohibited from making loans on real estate security, but a mortgage given to such a bank to secure future advances is a valid security, which can be questioned only by the government. (*Genesee Nat. Bank* v. *Whitney,* 103 U. S. 99.) Only the sovereign can object to a conveyance to a corporation incompetent by its charter to take the title to real estate. It is valid until assailed in a direct proceeding instituted for that purpose. (*Fritts* v. *Palmer,* 132 U. S. 282; *Hickory Farm Oil Co.* v. *Buffalo, New York and Philadelphia Railroad Co.* 32 Fed. Rep. 22; *Bone* v. *Delaware and Hudson Canal Co.* 2 Sad. (Pa.) 55; *Chicago, Burlington and Quincy Railroad Co.* v. *Lewis,* 53 Iowa, 101; *Carlow* v. *Altman,* 28 Neb. 672.) Where the statute prohibited a corporation from owning over five thousand acres of land, the question whether a corporation owning a greater quantity of land exceeded its powers in purchasing an additional quantity is a question between the corporation and the State, only, and does not concern the vendors or others. (*American Mortgage Co.* v. *Tennille,* 87 Ga. 28.) These are cases in which the conveyance was made to the corporation and not by the corporation, but there is no difference, in principle, whether the excess of power is in purchasing or in selling. The corporation having the power in such cases to sell and convey property, the question whether it exceeded its power is for the State, only.

The appellant has no such interest as entitled it to enjoin the appellee from constructing a railroad in this pass. The only injury of which it can complain in a judicial tribunal is the invasion of some legal or equitable rights. It alleges that the appellee is acting beyond its authority

under the law because the conveyance under which it claims was beyond the charter power of its grantor to make. This conveyance, however, did not injuriously affect any right of the appellant, and it has, therefore, no ground to complain. Neither the Toledo, St. Louis and New Orleans Railroad Company nor the appellee owed any duty to the appellant in regard to this land or to the title thereto. A stockholder in the grantor company might have an interest in restraining it within the limits of its corporate powers and the State might have an interest in preventing the usurpation and perversion of its franchises, but the appellant has no interest in these questions and cannot raise them to enable it to seize the property which is the real subject matter of the controversy. *New Orleans, Mobile and Texas Railway Co.* v. *Ellerman,* 105 U. S. 166.

It is urged that by the abandonment of the right of way by the Toledo, St. Louis and New Orleans Railroad Company the property reverted to the original grantors of that company, and that they had the power to convey a good title to the appellant. There is no evidence of any intention to abandon the right of way. To constitute such an abandonment there must not only be non-user but an intention to abandon. (*Stannard* v. *Aurora, Elgin and Chicago Railroad Co.* 220 Ill. 469; *Durfee* v. *Peoria, Decatur and Evansville Railway Co.* 140 id. 435.) In the latter case the railway company took up the rails and ties over the place in controversy and failed to occupy it for nine or ten years but without an intention to abandon it, and it was held that there was no abandonment. Here the railroad company was unable to construct its railroad within ten years after filing its articles of association, but there is no evidence that it ever ceased its efforts to procure its construction or intended to do so. The sale of the right of way was not an abandonment, but was an attempt to secure the application of the right of way to railroad pur-

poses. It is immaterial that the particular corporation was unable to build the railroad. The right of way cannot be said to have been abandoned so long as the original grantee or its grantees are occupying it for railroad purposes. *Crolley* v. *Minneapolis and St. Louis Railway Co.* 30 Minn. 541; *Noll* v. *D., B. & M. Railroad Co.* 32 Iowa, 66; *Hatch* v. *Cincinnati and Indiana Railroad Co.* 18 Ohio St. 92; 1 Redfield on Railways, 221.

The decree of the circuit court dismissing the bill was right, and it is affirmed.       *Decree affirmed.*