(No. 12680.—Reversed and remanded.)

THE GULF LINES CONNECTING RAILROAD OF ILLINOIS, Appellant, *vs.* THE GOLCONDA NORTHERN RAILWAY *et al.* Appellees.

*Opinion filed December 17, 1919.*

1. QUO WARRANTO—*title to land cannot be litigated in quo warranto.* In *quo warranto* proceedings the title to land cannot be put in litigation.

2. SAME—*a judgment of ouster becomes effective when pronounced.* A judgment of ouster becomes effective when it is pronounced and no process is necessary to carry the judgment into effect.

3. CORPORATIONS—*ownership of land includes power of disposition.* Ownership of land by a corporation carries with it the power of disposition, if such power is not restrained by statute or considerations of public policy.

4. SAME—*common law doctrine that there is no owner of corporate property upon dissolution is obsolete.* Upon the dissolution of a corporation the assets will be administered for the benefit of the stockholders subject to the rights of creditors, and the common law doctrine that there is no owner of the property is obsolete.

5. RAILROADS—*failure to complete road in ten years does not divest railroad company of title to land purchased for right of way.* Under section 26 of the act for the incorporation of railroad com-

panies, when a company fails to complete its proposed line of road within ten years it ceases to have the right to build the road, but the company still holds title to the land which it has purchased for a right of way and has the power to convey the land.

6. SAME—*judgment of ouster against a railroad company does not authorize another company to enter without title.* Where a railroad company has acquired title to land for a right of way but has failed to complete its road within ten years a judgment of ouster in a *quo warranto* proceeding merely ousts the company from exercising the franchise to build and operate a railroad on the right of way and does not authorize another company to enter upon the land without making compensation or acquiring title lawfully.

7. SAME—*when an attempted re-location of line is void.* An attempted re-location of a line of railroad by formal action of the directors taken after a judgment of ouster has been entered against the company for failure to build its road within ten years is void.

8. INJUNCTION—*owner of land will be protected by injunction against illegal entry under color of power of eminent domain.* An illegal entry upon private land under color of the power of eminent domain will be restrained by a court of equity without regard to the usual conditions for the exercise of equitable jurisdiction, as the action is based upon the attempted misuse of the sovereign power delegated by the legislature and the protection of the individual right against the wrong.

9. SAME—*unconditional injunction will not be allowed if injurious to public interest.* Although an owner of land is entitled to an injunction against a railroad company for entering and constructing a road upon his land under color of the power of eminent domain and without making compensation, if the public convenience is involved and the occupant is performing a public service the equitable jurisdiction will not be exercised without giving a reasonable opportunity to agree upon the compensation to be paid or to have such compensation ascertained according to law.

APPEAL from the Circuit Court of Pope county; the Hon. A. W. LEWIS, Judge, presiding.

JOHN W. BROWNING, and C. L. V. MULKEY, for appellant.

CHARLES DURFEE, J. C. COURTNEY, and BARR & FEIRICH, (BLEWETT LEE, and W. S. HORTON, of counsel,) for appellees.

290—25

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 18, 1902, the Toledo, St. Louis and New Orleans Railroad Company was organized under the act providing for the incorporation of railroad companies, with a capital stock of $50,000, to construct a railroad from a point in Shelby county to a point on the Ohio river in Massac county. It did not finish its railroad, or any part of it, and put the same in operation, within ten years from the time of filing its articles of association, as required by section 26 of the act under which it was incorporated, which declares that in such event the corporate existence and powers shall cease. On March 13, 1909, the Golconda Northern Railway was organized under the same act for the purpose of building a railroad from Golconda to a point on the Ohio river near Elizabethtown, in Hardin county. North of Golconda, in Pope county, there is a narrow pass extending for more than two miles between high and rocky bluffs on one side and the Ohio river on the other, only wide enough to permit the construction of one railroad track and not sufficient for two. The Toledo Company on July 23, 1909, filed in the recorder's office of Pope county a map of the location of its line of railroad, including the right of way through this pass, and it obtained deeds of lands for its right of way one hundred feet wide through the pass from the owners. On January 26, 1912, the ten-year period allowed to the Toledo Company for constructing its railroad being about to expire, the Gulf Lines Connecting Railroad of Illinois was organized under the same act, with a capital stock of $50,000, to construct a railroad from a point in Vermilion county to a point on the Ohio river near Brookport, in Massac county. It was planned to have the Gulf Lines Company take over the property and franchises of the Toledo Company, and on March 5, 1912, just before the expiration of the ten-year period, the Toledo Company executed two deeds to the Gulf Lines Company. One deed for a

consideration of one dollar and the assumption of the obligations, liabilities and debts of the Toledo Company purported to convey the real estate, right of way, property, rights, privileges, franchises, powers and immunities of the grantor south of a point in Carmi, and the other deed purported to quit-claim to the grantee the real estate acquired for right of way. The land acquired for right of way by the Toledo Company had been cleared but was overgrown with brush, which the Gulf Lines Company cleared away. The Golconda Company surveyed and located its line of railroad through the pass in controversy, and in August, 1912, began the work of construction north of the north end of the pass and in November had arrived at the north end of the pass and was working there with teams. On November 25, 1912, the Gulf Lines engineer, with a party of assistants, was engaged in surveying, beginning at the north end of the pass, re-tracing the old lines and setting grade stakes for construction work. On November 29 a construction outfit was unloaded on the premises and the work of grading and construction through the pass was prosecuted by contractors of the Gulf Lines Company. Between November 20 and 25 the Golconda Company's engineer began surveying through the pass from the north end, and on November 26 that company began to fence in the right of way through the pass with wires and completed the fencing by November 30. During December, January and February each company had a force of men at work in the pass, grading and laying ties and rails, and each interfered with the work of the other, throwing off the ties and rails and obstructing and destroying work of the other.

On February 6, 1913, the Golconda Company filed its bill against the Gulf Lines Company to restrain it from interfering with, obstructing or hindering the complainant in the construction of its railroad through the pass. The bill was dismissed by the circuit court of Pope county for want of equity, and from that decree the Golconda Company ap-

pealed to this court. It was held on the appeal that the line through the pass having been selected and located by the Toledo Company the right of appropriation of the land for railroad purposes belonged to that company, and the question whether the company had exceeded its power by selling its located line, right of way, franchise and property could not be raised by the Golconda Company but could be raised only by the State in a proper proceeding, and that the transfer gave no right to the Golconda Company to appropriate the right of way, to which it had no title. The decree of the circuit court dismissing the bill was affirmed. (*Golconda Northern Railway* v. *Gulf Lines Connecting Railroad,* 265 Ill. 194.) Thereafter an information in the nature of *quo warranto* was filed in the circuit court of White county, on the relation of the Golconda Northern Railway and others, against the Toledo, St. Louis and New Orleans Railroad Company and the Gulf Lines Connecting Railroad of Illinois, to prevent either of said corporations from constructing a railroad on the right of way one hundred feet wide extending from the city of Carmi, in White county, to a point near Brookport, in Massac county, which was the right of way located by the Toledo Company. The information alleged that neither the Toledo Company nor the Gulf Lines Company ever owned, possessed or operated a railroad in the State of Illinois or elsewhere; that the deeds from the Toledo Company to the Gulf Lines Company were executed for the purpose of evading the law, which provided that if any railroad corporation did not finish its railroad within ten years from the time of filing and recording its articles of association its franchise should cease. The court found the defendants guilty and imposed a fine of $25 on each, with costs, and ousted them from holding all or any part of the located line for right of way or exercising the franchise to build a railroad on the same. On appeal to this court it was held that the protection of the located right of way to the Toledo Com-

pany so that no other corporation could appropriate it extended it for a period of ten years, only; that the Toledo Company having failed to build its road upon its located right of way within ten years lost all right to construct the same, and that the attempt to evade the statute by transfer of the right of way and franchise to another company would not defeat the statute, but the right of way assumed its former status as private property and became subject to all the burdens and liabilities of other real estate, and any railroad corporation desiring to do so might then locate its line over it or any part of it. It was expressly declared that the court was not concerned in that proceeding with the title to the real estate, but the only question was the right of the Toledo Company to transfer its right to build a railroad and its franchises and the right of the Gulf Lines Company to purchase and receive the same, and, consequently, the right of either of them to exercise the franchise of building or operating a railroad on the right of way. The conclusion of the circuit court was approved, but it was ordered that the judgment should oust both respondents from exercising the privilege and franchise of constructing a railroad on the right of way from East Carmi to Brookport. The judgment was reversed and the cause remanded, with directions to enter such a judgment. *People* v. *Toledo, St. Louis and New Orleans Railroad Co.* 280 Ill. 495.

On March 14, 1917, the original bill in this case was filed in the circuit court of Pope county by the Gulf Lines Company against the Golconda Company and the Illinois Central Railroad Company, and the bill was answered by them. On January 22, 1918, a supplemental bill was filed, and the answer to the original bill was re-filed. The answer to the supplemental bill was afterward amended, and it was stipulated that the pleadings and facts on which this court based its decisions in the former cases, as set forth in the published opinions, should be considered as evidence in this case so far as applicable and relevant, and that the circuit

court of White county had entered final judgment in accordance with the mandate of this court in the *quo warranto* case. The supplemental bill alleged that on February 1, 1913, the Golconda Company and the Illinois Central Railroad Company entered into a contract by which the railroad of the Golconda Company was leased to the Illinois Central Railroad Company for a twenty-year period, with stipulations as to purchase and sale; that the Illinois Central Railroad Company, in conjunction with the Golconda Company, while the complainant was in possession of the land as right of way, without paying or offering to pay compensation for the same or condemning the same, came upon the ground with a large force of men and forcibly invaded the possession of the complainant. It also alleged that the only ground of the judgment in the *quo warranto* case was that the Toledo Company having previously adopted the strip of land in question, its right became a personal and exclusive privilege derived from the State which was incapable of transfer, and therefore the complainant acquired no right to build a railroad by virtue of the conveyance of the Toledo Company and it was ousted from the exercise of that privilege, but more than ten years after the organization of the Toledo Company, and before any other company had located its railroad thereon, complainant on October 25, 1917, by formal action of its board of directors, adopted the strip of ground as the location of its road and thereby obtained a valid subsisting right to construct its railroad on the strip of ground to the exclusion of all other railroad corporations. Evidence was also heard from which it appeared that a railroad was laid through the pass in the spring of 1918 and had been used regularly since then as a railroad track by the Illinois Central Railroad Company. The bill was dismissed for want of equity, and from that decree this appeal was prosecuted.

It was not decided either in the injunction suit or the *quo warranto* suit that the deeds for the tracts of land which

it was alleged the Toledo Company had obtained, purporting to convey to it the title in fee simple, were void and conferred no title upon the grantee.  On the contrary, the court in the *quo warranto* case said that the title to the real estate was not involved and the court was not concerned with it but the right of way assumed its former status as private property.  The decision was that the deed of the Toledo Company to the Gulf Lines Company of the grantor's chartered privileges and franchises to construct a railroad on the right of way selected was beyond the power of the Toledo Company and was of no effect, but it was not held that the title to the real estate described in both deeds was not thereby conveyed.  In *quo warranto* proceedings the title to land cannot be in litigation.  (*Society Perun v. City of Cleveland,* 43 Ohio, 481; *State v. Pittsburg, Youngstown and Ashtabula Railroad Co.* 50 id. 239; *State v. American Book Co.* 65 Kan. 847; 2 Cook on Corp.— 5th ed.—sec. 694.)  The conveyance by the Toledo Company did not operate to locate the contemplated railroad of the Gulf Lines Company on the disputed strip of land but it vested title to the land in the Gulf Lines Company.  Ownership of land by a corporation carries with it the power of disposition, if such power is not restrained by statute or considerations of public policy.  (7 R. C. L. 571.)  The Toledo Company during the ten-year period had lawful power and authority to acquire, by purchase, title in fee simple for necessary right of way for its line of railroad.  When it failed to complete its road within ten years it ceased to have the right to build it, but it still held title to the land it had purchased and had the right to convey it.  (3 Thompson on Corp. secs. 2369, 2807.)  The appellant had, previous to the decision of this court in the *quo warranto* case, been in possession of the land and engaged in the work of constructing its railroad thereon, and two days after the decision in that case was made its board of directors by formal action located its line of railroad on the land.

This attempted location was absolutely null and void. When the judgment of ouster was pronounced no process was necessary to carry the judgment into effect, but it became effective at once and for all time. It would be a mockery of law and justice to permit the judgment to be set aside and its purpose defeated by re-location, which was but a repetition of the same offense against the statute. The judgment in the *quo warranto* case merely ousted the defendants in that case from exercising the privilege and franchise to build and operate a railroad on the right of way and did not deprive the Gulf Lines Company of its real estate or authorize any other corporation to seize it without just compensation. Even in case of a dissolution of a corporation, the common law doctrine that upon such dissolution there remains no owner of the property is obsolete, and the assets of the corporation will be administered, subject to the rights of creditors, for the benefit of the stockholders. (*Wheeler* v. *Pullman Iron and Steel Co.* 143 Ill. 197; 7 R. C. L. 740.) The invasion of the defendants into and appropriation of the land was without the semblance of title or right and was unlawful.

It is contended that equity had no jurisdiction and the bill would not lie because the complainant's title was disputed and the injury was not irreparable and the complainant was estopped by its own fault. In *Toledo, St. Louis and New Orleans Railroad Co.* v. *St. Louis and Ohio River Railroad Co.* 208 Ill. 623, where this same pass was in dispute between the Toledo Company and another railroad company, a decree dismissing a bill for an injunction was affirmed on the ground that a court of equity did not lend its aid to enforce a forfeiture for a breach of a condition subsequent, and would not hear and determine a proceeding to remove a cloud from title where the lands in controversy were in the possession of the defendant unless some other ground of equitable interference should appear. But this case has a different purpose. When an illegal entry upon

private land under color of the power of eminent domain is attempted, it will be restrained by a court of equity without regard to the usual conditions for the exercise of equitable jurisdiction. The action is based upon the attempted misuse of the sovereign power delegated by the legislature and the protection of the individual right against the wrong. (*Shute* v. *Chicago and Milwaukee Railroad Co.* 26 Ill. 436; *Lowery* v. *City of Pekin,* 186 id. 387; 10 R. C. L. 228.) As a general rule, a prior location of a railroad will be protected against a rival company by injunction. (*Fayetteville Street Railway Co.* v. *Aberdeen and Rockfish Railroad Co.* 142 N. C. 423; *Chesapeake and Ohio Railway Co.* v. *Deepwater Railway Co.* 57 W. Va. 641.) Although the decision is against the claim of the complainant to the prior location, the court of equity had jurisdiction. The entry of the defendants being unlawful, an action of trespass would lie. (*Chicago and Iowa Railroad Co.* v. *Baker,* 73 Ill. 316.) In that case the Chicago and Iowa Railroad Company entered upon the plaintiff's land and constructed a railroad across it without having ascertained and paid compensation, and in a similar case where the company was an intruder, having no easement of right of way, it was said that ejectment would lie. (*Chicago and Iowa Railroad Co.* v. *Hopkins,* 90 Ill. 316.) Neither trespass nor ejectment would have been a complete and adequate remedy in this case, but if that were not true, injunction was a proper remedy. The Golconda Company and the Illinois Central Railroad Company being mere intruders upon the land, without right or title either derived by agreement with the owner or by condemnation, the owner would be entitled to an injunction to prevent the taking and use of the land in that manner.

The persistent argument that because the complainant cannot build a railroad it has no right to a remedy for the protection of its property is without foundation. A private owner of land cannot build a railroad upon it and exercise the privileges and franchise of a railroad corpora-

tion, but a court would give no heed to an argument that on that account a railroad corporation having the right could take his property and leave him without remedy. The argument of the trespassers that the owner cannot object to having its land taken from it because it attempted to build a railroad on the land without lawful authority is novel and baseless.

The complainant is entitled to an injunction, but an unconditional injunction effective immediately would be injurious to the public interest. If the case is one where the public convenience is involved and the occupant is performing a public service, the equitable jurisdiction ought not to be exercised without giving a reasonable opportunity to agree upon the compensation to be paid or to have such compensation ascertained according to law. (*New York* v. *Pine,* 185 U. S. 93; *Simmons* v. *Paterson,* 60 N. J. Eq. 385; 10 R. C. L. 230.) This case comes within the rule, and an unconditional injunction will not be allowed but time will be given to enable the defendants to agree with the owner or condemn the property so that the public convenience and interest shall not be affected.

The court erred in dismissing the bill and the decree is reversed and the cause remanded, with directions to enter a decree that unless the defendants shall within sixty days from the entry of such decree agree with the complainant upon the compensation to be paid for the property, or shall within that time begin a proceeding to have the compensation ascertained as for private property as herein stated, and when such compensation shall be finally ascertained pay the same without delay, a perpetual injunction shall by order of the court enjoin the defendants from occupying or using the land.       *Reversed and remanded, with directions.*