**CROCKER et al. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 5749.

Circuit Court of Appeals, Seventh Circuit.

June 2, 1936.

Rehearing Denied July 9, 1936.

Robt. P. Vail, of Decatur, Ill., for petitioners.

John MacC. Hudson, Frank J. Wideman, both of Washington, D. C., Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to the Atty. Gen., for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Petitioners appeal from decisions of the United States Board of Tax Appeals approving the assessment of taxes of $6,-255.75 against them as transferees of the Maroa Electric Light Company in three appeals there heard in a consolidated proceeding.

The light company was incorporated in 1892 for 20 years. Its charter was forfeited prior to expiration because of failure to file statutory reports, but, until the sale hereinafter mentioned, the assets were not conveyed by the corporation. The capital stock was held by petitioners, who are members of one family. After the forfeiture and the expiration of the charter by its terms, the utility business of the corporation was conducted in the corporate name by petitioner John Crocker, and he and his associates treated the assets and franchises as owned by them as tenants in common.

In 1909 John Crocker received from the city, in his own name, a franchise to operate the utility and a contract to light the streets of Maroa for twenty-four years. Previously existing contracts and franchises to the corporation were cancelled. In 1910 the old building and generator were abandoned. Thereafter electric current was not generated but was purchased from another electric utility company at wholesale and resold at retail. The business was unprofitable orig-inally, but after the change to purchase of current its earnings were substantial. After the date of expiration of the charter, the business was conducted, under the franchises and contracts issued to John Crocker, in the corporate name. Reports to the Illinois Commerce Commission bore such name, but stated that the company was not incorporated. Income tax reports, at the insistence of the taxing authorities, under protest, were made in the corporate name. No formal corporate organization was maintained.

On July 5, 1927, John Crocker contracted to sell to the Illinois Power & Light Corporation, for $60,000, the real and personal property, the franchise and contract aforesaid, and all of the capital stock of the "Maroa Electric Light Company, which formerly owned and operated the plant." He procured conveyances from all individuals claiming interest in these assets, including assignments of the certificates of stock.

The purchase price, $60,000, was paid to him, and out of the same he first paid the debts and then distributed the balance, $57,000, to the individuals in accordance with their respective interests in the property of the corporation.

The Commissioner assumed that the company was an association, found that a capital gain had been realized upon the sale, and assessed a deficiency tax against the company for $6,255. The company being without assets and the assessment uncollectible, the Commissioner extended the assessment of the deficiency against petitioners, as transferees of the corporation. The Board of Tax Appeals approved the action of the Commissioner. This petition to review followed.

Petitioners contend that the company was not a corporation or an association taxable as a corporation, that petitioners are not liable as transferees, and that, if there is a liability, the Commissioner's assessment is excessive.

■ Obviously, at least upon expiration of its charter, the company ceased to be a corporation de jure, and the state might have objected to its further exercise of corporate authority. In an early day it was held that upon the cessation of existence a corporation's property, in part, would escheat to the sovereign. Morawetz on Private Corporations (2d Ed.) §§ 1031 and 1032. But it is now commonly held

that, inasmuch as the shareholders are themselves the contributors of the property, the corporation holds the same in trust for them. Under the statutes of Illinois a corporation continues its existence for the purpose of winding up its corporate affairs, and the property is a trust fund for the creditors and stockholders. Thus the Supreme Court of Illinois, in Wheeler v. Pullman Iron & Steel Co., 143 Ill. 197, at page 204, 32 N.E. 420, 422, 17 L.R.A. 818, said: "In respect of trade corporations, independently of statutory provision, and notwithstanding the dissolution of the corporation, its assets belong to those who contributed to its capital, and for whom it stood as representative in the business in which it was engaged, and are treated in equity as a trust fund, to be administered·for the benefit of the bona fide holders of stock, subject to the just claims of creditors of the corporation."

Again, in Gulf Lines R. R. v. Golconda Ry., 290 Ill. 384, at page 392, 125 N.E. 357, 360, the court said: "Even in case of a dissolution of a corporation, the common-law doctrine that upon such dissolution there remains no owner of the property is obsolete, and the assets of the corporation will be administered, subject to the rights of creditors, for the benefit of the stockholders."

In that case the right of the corporation to exercise its corporate functions had expired, and, concerning the title to its property, the court said (290 Ill. 384, at page 391, 125 N.E. 357, 360): "The Toledo Company during the ten-year period had lawful power and authority to acquire, by purchase, title in fee simple for necessary right of way for its line of railroad. When it failed to complete its road within ten years, it ceased to have the right to build it, but it still held title to the land it had purchased and had the right to convey it."

The theory is well stated in Morawetz in these words: "A private corporation, as has been pointed out, is a voluntary association of individuals. This association may undoubtedly continue·to exist, as a matter of fact, after its franchise or legal right to exist has expired or been extinguished. A corporation continuing to carry on business after its franchise has expired or been extinguished would, in technical language, be a corporation de facto, but not de jure. * * *

Such a corporation would certainly possess no special powers, like the power of condemning property, which the law confers only upon corporations existing by legal right. But the courts cannot reasonably ignore the existence of such a corporation, if it is an immutable fact; nor would the acts and dealings of the corporation necessarily be legally ineffective, or its contracts of no binding force." (2d Ed.) § 1002.

Regarding the conduct of the business, the same authority states in section 1003: "If the shareholders of the corporation should preserve the corporate organization, and continue the company's operations after the expiration of their charter, the corporation would be a corporation de facto existing without legal right. The same would be true if the franchise conferred by the charter should for any reason cease before the agreement between the shareholders constituting the corporation has expired."

In Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, the Supreme Court held that article 1502 of Regulations 69 of the Treasury Department is within the power of administrative construction. The article provides: "A corporation which has ceased to exist in contemplation of law but continues its business in quasi-corporate form is an association or corporation within the meaning of section 2."

It further provides: "Associations·and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization."

The Revenue Act of 1926, c. 27, 44 Stat. 9, § 2, 26 U.S.C.A. § 1696, provides that the term "corporation" shall include associations.

From what we have seen, on expiration of its charter the corporation continued to own the property as trustee for its shareholders. It remained, to all ef-

.fects and purposes, under the rules mentioned, a de facto corporation. The owners, at the most, became in equity tenants in common in the property used in the business and held in the corporate name in trust for them. Congress has classed associations with corporations; and the Revenue Department, under a regulation approved by the Supreme Court as a legitimate exercise of administrative authority, has classified as a corporation a business conducted in quasi corporate form after a corporation ceases to exist. It follows that the Commissioner of Internal Revenue and the Board of Tax Appeals were correct in their classification of this utility business, under the act and the regulations referred to and in the assessment of a tax for the income resulting from the gain realized in a sale of the assets.

The inevitable result of the act of this quasi corporation, through John Crocker, in distributing the proceeds of sale to the individuals, was to effectuate a transfer of the money to the equitable owners of the trust property. They were therefore properly treated as transferees, within the meaning of section 280 (a) (1) and (f) of the Revenue Act of 1926, 44 Stat. 61, under which "transferee" includes distributee. The statutory liability of such transferee is merely a restatement of the equitable doctrine that, where there are distributed assets as to which a tax attaches, there is a resulting trust to the extent of the amount of the tax. Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289; Pierce v. United States, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697; Fairless v. Commissioner, 67 F.(2d) 475 (C.C.A.6).

Petitioners contend that the Commissioner should have made an allowance for value of intangibles as of March 1, 1913. The average annual profit from 1908 to 1912, inclusive, after deducting an annual depreciation of $620, was $684.76, approximately 5 per cent. upon the average tangible investment of $13,477.19 during the same period.

The only question is whether petitioners' evidence overcame the prima facie correctness of the Commissioner's determination. We think it did not. True, corporate earnings increased after the character of the business changed; but it is impossible to say whether such increase was due to the merit and value of in-

tangibles or to the new method of operation; namely, purchasing current and distributing it instead of manufacturing it.

The decisions of the Board of Tax Appeals are affirmed.