**In re Margaret and Sam LIPUMA, Debtors.**

**Bankruptcy No. 92 B 25797.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 19, 1994.

Jeffrey E. Marek, Berkeley, IL, L. Judson Todhunter, Gallagher & Joslyn, Oakbrook Terrace, IL, Jay S. Geller, Jenner & Block, Chicago, IL for debtors.

Richard L. Hirsch, Oak Brook, IL for West Town Buyer's Group.

## MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 7 case is now before the court on motions raising questions about the operation of the automatic stay. One of the debtors owned stock in a corporation. The corporation owned real estate, but it paid neither its real estate taxes nor its franchise taxes. Because of the failure to pay franchise taxes, the corporation was dissolved. Because of the failure to pay real estate taxes, these taxes were sold in a tax sale. However, at the time of the sale the dissolution of the corporation had already taken place, and the debtors had filed their personal bankruptcy. Two questions arise from this situation: first, whether the automatic stay applied to the tax sale (because the shareholders of a dissolved corporation have an interest in its assets); and second, if the stay did apply, whether it should be annulled, so as to validate the tax sale retroactively. For the reasons set forth below, the court finds that the stay did apply, and that it should be annulled.

### Jurisdiction

This court has jurisdiction to hear the pending motions pursuant to 28 U.S.C. § 1334(a) and (b); 28 U.S.C. § 157(a) and (b); and General Rule 2.33 of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### Facts

The relevant facts are undisputed. On November 19, 1992, Margaret Lipuma ("Margaret") and her husband (jointly, the "Lipumas") filed a petition for relief under Chapter 7 of the Bankruptcy Code (Title 11, U.S.C.). In their bankruptcy schedules, the Lipumas disclosed that Margaret owned fifty percent of the shares of an Illinois corporation, Martom, Inc. ("Martom"). At the time of the bankruptcy filing, Martom owned a parcel of real property in Maywood, Illinois, which was encumbered by a mortgage in favor of the National Bank of Commerce (the "bank"). In their schedules, the Lipumas declared that Margaret's stock in Martom had no value.

On January 2, 1993, Martom was involuntarily dissolved for failing to file its annual report and to pay its annual franchise taxes. Shortly thereafter, on January 29, 1993, the

524

bank filed a motion for relief from stay in the Lipumas' bankruptcy, seeking to foreclose on Martom's Maywood property. On February 12, 1993, this court granted the motion, on the grounds that the Lipumas had no equity in the Maywood property and that the property was not necessary for the effective reorganization of their financial affairs. On May 10, 1993, after the filing of a no-asset report by the Chapter 7 trustee and the granting of a discharge to the Lipumas, the bankruptcy case was closed.

On February 9, 1993, three days before the bank obtained relief from the automatic stay, local authorities conducted a sale of the 1991 real estate taxes owed on the Maywood property, without first obtaining relief from the stay. The West Town Buyers Group ("West Town") purchased the 1991 real estate taxes at the sale.

Again without relief from the automatic stay, West Town petitioned the state court for the issuance of a tax deed on the Maywood property. On November 16, 1993, the state court entered an order directing the issuance of that deed. In February and March, 1994, Margaret petitioned the state court to vacate the order directing the issuance of the tax deed. Her motions were premised in part on arguments (1) that the tax sale violated the automatic stay; and (2) that parties interested in the tax sale did not receive proper notice of the sale or subsequent state court proceedings. The state court declined to rule on those motions pending a determination by this court of the applicability of the automatic stay.

In accordance with the state court's decision, the Lipumas, joined by the bank, filed a motion to reopen the bankruptcy case, asking this court to enter an order declaring the tax sale to be void because it violated the automatic stay. In response, West Town also moved to reopen the bankruptcy case, in order to obtain a declaration that the automatic stay did not apply to the tax sale or, alternatively, a court order retroactively annulling the stay with respect to the tax sale.

On March 24, 1994, this court ordered Lipumas' bankruptcy case reopened so that the court could determine both the applicability of the automatic stay and the question of annulment.

**Discussion**

*The applicability of the automatic stay.* The filing of a petition for relief under section 302 of the Bankruptcy Code operates as a stay of any act to enforce a lien against property of the estate. 11 U.S.C. § 362(a)(4). Illinois tax sales have been held to constitute acts to enforce liens, and therefore within the scope of the automatic stay. *In re Shamblin,* 890 F.2d 123, 125 (9th Cir. 1989); *In re Garcia,* 109 B.R. 335, 337 (N.D.Ill.1989); *In re Young,* 14 B.R. 809, 811 (Bankr.N.D.Ill.1981); *see Richard v. City of Chicago,* 80 B.R. 451, 453 (N.D.Ill.1987) (finding a tax sale to be in violation of the automatic stay without identifying the governing provision of section 362(a)).

The mechanics of Illinois tax sales are concisely summarized in *In re McKeever,* 132 B.R. 996, 1004–08 (Bankr.N.D.Ill.1991), and need not be repeated here. The tax sale in this case, however, presents a novel issue concerning the applicability of the automatic stay: whether a debtor who is a shareholder in a dissolved Illinois corporation acquires an interest in the assets of the corporation so as to make those assets property of her bankruptcy estate. West Town contends that the tax sale was not an act to enforce a lien against property of the estate since even after its dissolution, Martom, rather than the Lipumas, held legal title to the Maywood property. Margaret and the bank disagree, arguing that the dissolution of Martom left Margaret, as a shareholder, with an interest in Martom's assets, including the Maywood property that was the subject of the tax sale.

State law ultimately governs the question of whether the Maywood property was property of the estate and therefore subject to the automatic stay. The commencement of a case under section 302 of the Bankruptcy Code creates an estate. 11 U.S.C. § 541(a). The property of that estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1) & (7). The Bankruptcy Code does not define the legal

and equitable interests that may be included in an estate. Instead, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979) (applying the Bankruptcy Act of 1898); *UNR Industries, Inc. v. Continental Casualty Co.*, 942 F.2d 1101, 1103–04 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1586, 118 L.Ed.2d 305 (1992); *In re Jones*, 768 F.2d 923, 927 (7th Cir.1985) ("Whether the debtor has an interest in property, and if he does, the nature of the interest, is not defined in the [Bankruptcy Code], and requires resort to nonbankruptcy law. Generally, this means resort to state law...."). Accordingly, Illinois law governs whether the estate here has an interest in the Maywood property in light of Martom's dissolution.

■ West Town is correct in arguing that a dissolved Illinois corporation retains legal title to its assets. 805 ILCS § 5/12.-30(c)(1). That does not imply, however, that the shareholders have no interest in a dissolved corporation's assets. Albeit with different descriptions, the Illinois courts have consistently found that shareholders do have an interest in the assets of a dissolved corporation. Some courts state that the shareholders are the beneficiaries of an equitable trust whose corpus consists of all the assets of the dissolved corporation. *Wheeler v. Pullman Iron & Steel Co.*, 143 Ill. 197, 204, 32 N.E. 420, 422 (1892) ("[A dissolved corporation's] assets belong to those who contributed to [the corporation's] capital ... and are treated in equity as a trust fund, to be administered for the benefit of the bona fide holders of stock, subject to the just claims of creditors of the corporation."); *see Gulf Lines Connecting R.R. of Illinois v. Golconda Northern Ry.*, 290 Ill. 384, 392, 125 N.E. 357, 360 (1919) ("[E]ven in case of a dissolution of a corporation ... the assets of the corporation will be administered, subject to the rights of creditors, for the benefit of the stockholders."). Other courts characterize shareholders as tenants in common of all the assets of the dissolved corporation. *In re Midwest Athletic Club*, 161 F.2d 1005, 1008 (7th Cir.1947) (court assumes, without deciding, that title to the property of a dissolved

Illinois corporation passed to the shareholders as tenants in common); *In re Ratner*, 146 B.R. 211, 218 (Bankr.N.D.Ill.1992); *Brooks v. Saloy*, 334 Ill.App. 93, 99–101, 79 N.E.2d 97, 100–01 (1948); *see Shute v. Chambers*, 142 Ill.App.3d 948, 952–54, 97 Ill.Dec. 92, 95–96, 492 N.E.2d 528, 531–32 (1986). Finally, one court combines the two formulas, describing the shareholders of a dissolved corporation as tenants in common of a beneficial interest in an equitable trust whose corpus consists of the assets of the dissolved corporation. *Crocker v. Commissioner of Internal Revenue*, 84 F.2d 64, 66–67 (7th Cir.1936) ("[O]n expiration of its charter the corporation continued to own the property as trustee for its shareholders.... The owners, at the most, became in equity tenants in common in the property used in the business and held in the corporate name in trust for them.").

■ Although these opinions employ different concepts in describing the nature of a shareholder's interest in the assets of dissolved Illinois corporations, they agree about the existence of such an interest. It is the existence, not the nature, of that interest which is dispositive here. Margaret Lipuma had a legal and equitable interest in fifty percent of Martom's issued and outstanding shares when she filed her bankruptcy petition. Those shares became property of her estate at that time. 11 U.S.C. § 541(a)(1). Martom's subsequent dissolution obliterated her shares by operation of law, but provided her estate with an interest, however characterized, in Martom's assets. *See* 11 U.S.C. § 541(a)(7) ("Any interest in property that the estate acquires after the commencement of the case" is included in property of the estate.). That interest was protected by the automatic stay from any act to enforce a lien against property of the estate. 11 U.S.C. § 362(a)(4). As a result, the tax sale violated the automatic stay. *See Shamblin*, 890 F.2d at 125 (postpetition Illinois tax sale); *Garcia*, 109 B.R. at 337; *In re Greer*, 89 B.R. 757, 759 (Bankr.S.D.Ill.1988); *Richard*, 80 B.R. at 453; *Young*, 14 B.R. at 811.

*Retroactive relief from the automatic stay.* Although the tax sale violated the automatic stay, it is not incapable of being effective.

The federal circuits are divided about the legal status of acts in violation of the automatic stay. Two circuit court decisions expressly view such acts to be merely voidable, and hence capable of being either voided or cured. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909–11 (6th Cir.1993); *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178–179 (5th Cir.1989). Other circuit court decisions, including one from the Seventh Circuit, deem such acts to be void *ab initio*. *In re Siciliano*, 13 F.3d 748, 750–51 (3d Cir.1994); *In re Schwartz*, 954 F.2d 569, 570–72 (9th Cir. 1992); *In re Calder*, 907 F.2d 953, 956 (10th Cir.1990); *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir.1987), *cert. denied, sub nom. Rockefellar Group, Inc. v. 48th Street Steakhouse, Inc.*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *In re Albany Partners*, 749 F.2d 670, 675 (11th Cir.1984); *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984) (interpreting the statutory predecessor of section 362); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir.1982). Both lines of cases, however, recognize that bankruptcy courts can enter orders which effectively eliminate the automatic stay as a ground for invalidating a postpetition action. *Compare Easley*, 990 F.2d at 909–12 *and Sikes*, 881 F.2d at 178–80 *with Siciliano*, 13 F.3d at 750–52; *Calder*, 907 F.2d at 956; *Albany Partners*, 749 F.2d at 675–76; *Matthews*, 739 F.2d at 251–52; *and Smith Corset Shops*, 696 F.2d at 976–77.

■ Accordingly, this court need not decide if the tax sale was void or voidable in order to resolve the present issue. Notwithstanding the applicability of the automatic stay to the tax sale, a bankruptcy court may validate the sale by granting retroactive relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code.

■ Such relief, however, can only be granted in accordance with equitable principles. The decisions cited above indicate that the principles of equity support the granting of retroactive relief from the automatic stay whenever a creditor did not have actual knowledge of the applicability of the automatic stay and the creditor would be unfairly prejudiced if the debtor could raise the stay as a defense. *Easley*, 990 F.2d at 910–11;

*Siciliano*, 13 F.3d at 749–52; *Calder*, 907 F.2d at 956; *Albany Partners*, 749 F.2d at 675–76; *Smith Corset Shops*, 696 F.2d at 976–77; *cf. Matthews*, 739 F.2d at 251–52. That is exactly the situation here.

■ For several reasons, neither West Town nor the local tax authorities knew of the applicability of the automatic stay to the tax sale at the time of that sale. First, the tax sale involved the liabilities of an Illinois corporation, Martom, and not the liabilities of the debtors in this case, the Lipumas. Second, Martom, not the Lipumas, held record title to the Maywood property. Third, Martom was involuntarily dissolved only a few weeks before the tax sale on the technical, and easily cured, grounds of failing to file its annual report and to pay its franchise taxes. Fourth, West Town and the local tax authorities did not know the identities of Martom's shareholders at the time of the tax sale. Finally, West Town and the local tax authorities did not receive any notice at the time of the tax sale that Margaret, a Martom shareholder, had filed a petition for relief under Chapter 7 of the Bankruptcy Code.

West Town would also be unfairly prejudiced if Margaret could raise the automatic stay as a defense to the tax sale since it had a valid legal basis at the time of the tax sale for lifting the automatic stay. Section 362(d)(2) of the Bankruptcy Code provides for the granting of relief from the automatic stay when the debtor has no equity in the property, and such property is not necessary for the debtor's effective reorganization. 11 U.S.C. § 362(d)(2). Both conditions existed at the time of the tax sale. The Lipumas' bankruptcy case was a Chapter 7 liquidation and, therefore, the Maywood property was not necessary for the effective reorganization of their financial affairs. *In re Rosemond*, 105 B.R. 8, 10 (Bankr.W.D.Pa.1989).

The Lipumas also had no equity in the Maywood property. Any equity that the Lipumas would have had in this property would have arisen from Margaret's ownership of Martom stock, but the Lipumas' bankruptcy schedules, filed in November 1992, declared the stock to be worthless. In February, 1993, the bank obtained relief from the auto-

matic stay based on a finding by this court that the Lipumas had no equity in the Maywood property. In May, 1993, the Chapter 7 trustee filed a no-asset report. Finally, Margaret has acknowledged in connection with the pending motions that she has no equity in the Maywood property. Accordingly, West Town certainly would have been able to obtain relief from the stay if it had known that the stay was applicable to the tax sale, and it would be unfairly prejudiced if the Lipumas could now raise the automatic stay as a defense to that sale.

As noted earlier, the Lipumas and the bank contend that inadequate notice was given of the tax sale, and that this is a ground that the court should consider in denying the equitable remedy of annulment of the stay. However, the adequacy of notice of a tax sale is quintessentially a question of state law, arising independently of the automatic stay. The most equitable result in this case is for the stay to be annulled, allowing the state court to determine the adequacy of notice.

### Conclusion

For the reasons set forth above, the court annuls the automatic stay to permit the parties to litigate their nonbankruptcy law disputes regarding the tax sale in pending state court proceedings. An order on the pending motions will be entered accordingly.