## COAST CARTON CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10859.

Circuit Court of Appeals, Ninth Circuit.
May 25, 1945.

Rehearing Denied July 12, 1945.

Meredith M. Daubin, of Washington, D. C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, Louise Foster, and Helen Goodner, Sp. Assts. to the Atty. Gen., for respondent.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Petitioner asks us to review and reverse a decision of the United States Tax Court, which approved a deficiency found against it by the Collector of Internal Revenue for payment of income tax, excess profits tax and penalty for the tax year 1939.

Petitioner was incorporated under the laws of the State of Washington in 1904 for a period of twenty-five years, which time expired, and no extension of the charter has ever been granted. The business of the enterprise has, without exception, been conducted under the original corporate name, and the Tax Court agreed with the Collector of Internal Revenue that after expiration of the charter, the entity carrying the corporate name was in fact an association taxable as a corporation. The Coast Carton Company's tax return for the year in question was on corporate form, and deductions were taken for compensation paid J. L. Norie, Jr., Mrs. J. L. Norie, Jr., and Mary E. Banks, as officers of the company. Such compensation was found to have been fraudulently claimed, and penalty was assessed.

J. L. Norie claims that he is the sole owner of Coast Carton Company and that it is neither a corporation nor an association. J. L. Norie has owned stock in the corporation since 1916, becoming sole owner of all outstanding stock in 1924. This stock consisted of common par value equaling $29,300 and preferred par value $25,-000. He transferred stock as follows: to his wife, Martha K. Norie, ten shares; to his son, J. L. Norie, Jr., eleven shares; and to his daughter, Mary E. Banks, ten shares. Although stock certificates were issued accordingly, they have remained in possession of J. L. Norie. No corporate or stockholders meetings have been held since 1926. In the summer of 1940 J. L. Norie was informed that the corporate charter had expired in 1929. Thereafter, J. L. Norie filed individual tax returns as to the company business. However, the business was continued under the corporate name; business was conducted and property was owned under the forms and practices of a corporation.

Martha K. Norie died in 1937. Her husband, J. L. Norie, acted as administrator, and the company stock which was issued in her name was inventoried. In 1928, J. L. Norie, Jr., an employee of the company, went east on company business. However, he abandoned such business and went to Spain, where he was killed in 1938, dying testate. The eleven shares of company stock were decreed to the widow, Esther Norie. The matter of payments to members of the Norie family is succinctly stated in the respondent's brief as follows:

"During 1938 Esther Norie received checks from the Coast Carton Company payable to her husband and used the proceeds thereof to support herself and two minor daughters. Her understanding was that the checks represented salary of her husband. The joint income tax return filed by Esther Norie for herself and husband

for 1938 reported salary of $2,934 received from the Coast Carton Company.

"Each week in 1939 through October 27, the taxpayer issued a check for maintenance and support of Esther Norie and her two minor children, but only the first five checks, totaling $294, were cashed by Esther Norie. Her policy was not to cash the checks unless the proceeds were needed for maintenance of herself and her family. Five other checks were in her possession uncashed on December 31, 1941. The remaining checks, aggregating $1,986, were not delivered to Esther Norie and are still in the possession of the taxpayer.

"The return filed by Esther Norie for 1939 reported the receipt of $540 from the Coast Carton Company as compensation for services rendered. Esther Norie did not at any time render services to the Coast Carton Company.

"For many years prior to the death of Martha K. Norie, $47 of her husband's salary was deposited to her credit each week for operating the family home. Upon her death in 1937, J. L. Norie made arrangements with his daughter to keep house for him. Each week thereafter, through October, 1939, J. L. Norie caused the Coast Carton Company to issue a check for $47 to his daughter for household expenses. Of the 43 checks, totaling $2,021 issued in 1939, the first one, issued January 6, was cashed in July, 1939, and the remaining checks were not cashed and were canceled prior to the close of 1939. Mary E. Banks performed no service for the Coast Carton Company.

"All of the checks issued in 1939 in favor of James L. Norie, Jr., and his wife, and the check for $47 issued to and cashed by Mary E. Banks, were charged on the books of the Coast Carton Company to an account entitled 'Salaries G. & A.' and at the close of 1939 transferred as a charge to profit and loss.

"In the income tax return filed by the Coast Carton Company on a corporate form for 1938, a deduction of $12,829 was claimed for compensation of J. L. Norie, as president, J. L. Norie, Jr., as secretary, and Mary E. Banks, as vice-president. A statement was made in the return that the officers devoted all of their time to the business.

"In the income tax return filed by the Coast Carton Company on a corporate form for 1939, deductions, totaling $8,887, were claimed as compensation of officers including J. L. Norie, J. L. Norie, Jr., Mrs. J. L. Norie, Jr., and Mary E. Banks. The return did not specify the title of the officers or the amount of time they devoted to the activities of the business. These deductions were taken from the books and records of the business. The returns for 1938 and 1939 were signed by J. L. Norie as president."

■ There is other evidence, some favorable to petitioner's contention, but it seems clear that there is substantial evidence in support of the government's contention that the Coast Carton Company was not owned solely by J. L. Norie, and that it was conducted as a corporation but without a corporate charter. Treasury Regulations, issued in 1940 under the Internal Revenue Code, § 19.3797-2 provides: "* * * If the conduct of the affairs of a corporation continues after the expiration of its charter, or the termination of its existence, it becomes an association." This regulation has appeared in exactly the same language in all of the regulations issued under pertinent statutory provisions during the past ten years. See § 29.3797-2 of Regulations 111, issued in 1943 under the Internal Revenue Code; Article 901-2 of Regulations 101, issued under the Revenue Act of 1938; Article 1001-2 of Regulations 94, issued under the Revenue Act of 1936; and Article 801-3 of Regulations 86, issued under the Revenue Act of 1934.[1] During the ten-year period this regulation has been in effect, Congress has continued to reenact without change the statutory provision pursuant to which the regulation was originally issued. Consequently, the regulation not only expresses the settled view of the department charged with administering the revenue laws, but it must be presumed that it has also received the approval of Congress. Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 355, 56 S.Ct. 289, 80 L.Ed. 263; Marshall's Heirs v. Commissioner of Internal Revenue, 3 Cir., 111 F.2d 935, 938.

We think there is substantial evidence to support the finding that the Coast Carton Company, during the tax year in ques-

[1] Similar provisions, but in somewhat different language, also appeared in earlier regulations issued during the twelve years preceding 1934. See Article 1312 of Regulations 74 and 77, and Article 1502 of Regulations 62, 65 and 69.

742

tion, was an association and was properly taxed under the provision of the tax code referring to corporations.

 The petitioner states: "The corporate statutes of the State of Washington provide for neither de facto nor de jure existence of a corporation whose charter life has expired by limitations." But this fact has no significance. The Congress has the power to lay the tax and is not limited by state law in its designation of taxable income. See Regulations above cited; Burk-Waggonor Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183, and Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L. Ed. 263.

There can be no question as to the falsity of the return, for large payments were indicated therein for salaries to persons who never functioned as employees or officers of the company. There was money paid the son's widow, and it is contended that this was proper under § 19.23(a)-9 of Regulations 103. It will be noticed, however, that deductions may be made for salary paid to an employee's widow for a limited period in recognition of services rendered. Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32; Poorman v. Commissioner of Internal Revenue, 9 Cir., 131 F.2d 946; Hawke v. Commissioner of Internal Revenue, 9 Cir., 109 F.2d 946; and Botchford v. Commissioner of Internal Revenue, 9 Cir., 81 F.2d 914.

 This phase of the case is factual. The Tax Court did not decide that payment could not be made to an employee's widow for a reasonable time after cessation of employment as compensation for benefits derived by the corporation from the employee's services, even though the corporation is not legally bound to compensate for them. What the Tax Court decided was that the payments made to the son's widow were not paid upon such consideration. Such inference is within the scope of substantial evidence.

There was substantial, though conflicting, evidence supporting the conclusion that J. L. Norie was the custodian of the issued stock certificates, and that the certificates which evidenced substantial, and not nominal, numbers of shares were regarded as evidence of interest in the business. The business was carried on under the forms and manner of a corporate business. We do not hold that the evidence supporting the Tax Court was conclusive on all phases of the case, but it reaches that degree which compels us under our limited powers on review to hold that no error is shown.

Affirmed.