JOHN A. SNIVELY, SR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31896. Promulgated April 22, 1953.

*James P. Hill, Esq.*, and *William R. Frazier, Esq.*, for the petitioner.
*Newman A. Townsend, Jr., Esq.*, for the respondent.

138

142

144

146

OPINION.

Rice, *Judge:* The respondent argues that under the provisions of section 24 (b)[1] of the Code, Lake Eloise may not deduct a loss on account of the sale of its assets to the Snively Trust because it arose from a sale between a corporation and an individual, or group of individuals, who were indirect owners of more than 50 per cent in value of Lake Eloise's stock. Section 24 (b) (1) (B). Or, in the alternative, the loss in not deductible because it arose from a sale between members of a family. Section 24 (b) (1) (A).

The respondent's argument with respect to this first issue is that the transaction was between Lake Eloise and John, an individual, or between Lake Eloise and the beneficiaries of the Snively Trust. He contends that the Snively Trust "If a trust at all, it was a dry, naked or passive trust which under Florida law is regarded as executed so as to vest the legal estate in the beneficiaries." He argues that the

[1] SEC. 24 (b) LOSSES FROM SALES OR EXCHANGES OF PROPERTY—

(1) LOSSES DISALLOWED.—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

(A) Between members of a family, as defined in paragraph (2) (D) ;

(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual ;

(C) Except in the case of distributions in liquidation, between two corporations more than 50 per centum in value of the outstanding stock of each of which is owned, directly or indirectly, by or for the same individual, if either one of such corporations, with respect to the taxable year of the corporation preceding the date of the sale or exchange was, under the law applicable to such taxable year, a personal holding company or a foreign personal holding company ;

(D) Between a grantor and a fiduciary of any trust ;

(E) Between the fiduciary of a trust and the fiduciary of another trust, if the same person is a grantor with respect to each trust ; or

(F) Between a fiduciary of a trust and a beneficiary of such trust.

arrangement was in substance simply a joint venture or a partnership because it filed partnership information returns and was identified on such returns as "a partnership." He states that if the purchaser were John, the sale clearly falls within the ambit of section 24 (b) (1) (B) and section 24 (b) (2) (B) and (D)[2]; and that, if the purchaser were the "partnership," every person beneficially interested therein was a member of the family of petitioner within the definition contained in section 24 (b) (2) (B) and the loss must be disallowed, since 94 per cent in value of the seller's stock was owned by the petitioner and a constructive ownership of such stock is imputed to his family by application of section 24 (b) (2) (B) and (D). The respondent concluded this argument by stating that, even if the Snively Trust were a valid trust, the loss is nevertheless not deductible because the beneficiaries of the trust were all members of the family of petitioner, citing *Estate of Charles C. Ingalls*, 45 B. T. A. 787 (1941), affd. 132 F. 2d 862 (C. A. 6, 1943).

His alternative argument on this issue is that, if the loss is not disallowed under section 24 (b) (1) (B), it must be disallowed by section 24 (b) (1) (A) because every person beneficially interested to any substantial extent in the sale creating the loss in question was a "member of the family" of the petitioner. He states that the petitioner, the holder of 94 per cent of the stock of Lake Eloise, was the individual who was beneficially interested as the seller and that the individuals who acquired beneficial interests in the property through the sale as buyers were his son, his daughters, and his grandchildren. He cites *McWilliams* v. *Commissioner*, 331 U. S. 694 (1947), for the proposition that the section applies to either direct or indirect sales between family members, and its coverage is therefore broad. He concludes by saying that stripped to its bare essentials, it is obvious that the instant sale was made either directly or indirectly between members of the family of the petitioner, that no outsider participated in the transaction or shared its benefits, except the group which held about 6 per cent in value of Lake Eloise's preferred stock, that the net result achieved by the sale was simply a transfer of petitioner's beneficial interest in Lake Eloise's properties to his children and

---

[2] SEC. 24 (b). LOSSES FROM SALES OR EXCHANGES OF PROPERTY.—

* * * * * * *

(2) STOCK OWNERSHIP, FAMILY, AND PARTNERSHIP RULE.—For the purposes of determining, in applying paragraph (1), the ownership of stock—

(A) Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries;

(B) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;

* * * * * * *

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and

grandchildren, and that looking to the substance of the transaction and ignoring the camouflage created by its form, the sale clearly occurred directly or indirectly, between "family members."

The respondent determined deficiencies in excess profits taxes, declared value excess-profits taxes, and also a penalty for failure to file an excess profits tax return, in addition to deficiencies in income taxes. The transaction that gave rise to the deficiencies was a sale of assets; therefore, according to the notice of deficiency, the sale had to be made by a corporation, or an association taxable as a corporation, if income from the sale could be taxed at excess profits tax rates. This would seem to eliminate section 24 (b) (1) (A) from further consideration since a corporation, or an association taxable as a corporation, is not a member of a family within the purview of that subsection. One of respondent's arguments is that the sale was made indirectly by petitioner, an individual. If that were so, it is difficult to see how a corporate tax could be asserted on the gain from the sale of the fruit.

We have found that Lake Eloise was an association taxable as a corporation and, under our holding in *Pierce Oil Corporation*, 32 B. T. A. 403 (1935), it is settled law that an association taxable as a corporation is to be treated as a corporation for all purposes of the Internal Revenue Code. Respondent, in his argument that the loss should be disallowed under section 24 (b) (1) (B), agrees that "the actual *seller* in the critical transaction was an association which for tax purposes is regarded as a corporation," citing sec. 3797 (a) (3), I. R. C.; Regs. 111, sec. 29.3797-2; *John Crocker*, 32 B. T. A. 861 (1935), aff'd. 84 F. 2d 64 (C. A. 7, 1936) ; *Coast Carton Co.* v. *Commissioner*, 149 F. 2d 739 (C. A. 9, 1945), affirming 3 T. C. 676 (1944). There can be no question but that Lake Eloise suffered a loss, and we think it was an actual loss and not an artificial one as claimed by respondent.

We are also of the opinion that the Snively Trust was a valid and not a "naked or passive" trust. The declaration of trust executed by John in December 1941, long before the transaction here in question, placed on him the burden of operating the grove property, keeping accurate records of transactions, and distributing the profits. He was an experienced grove operator. The fact that he erroneously reported the income of the pre-1943 trust on partnership information returns rather than on fiduciary returns is, on the basis of the entire record, unimportant. A partnership is not a taxable entity, and the tax liability of the beneficiaries of a distributable trust is the same whether the income is reported on a partnership or a fiduciary return. Cf. *L. A. Westerweller*, 17 T. C. 1532 (1953). It is to be noted that the partnership returns themselves indicated that John was the trustee. The Lake Eloise assets were purchased with funds of the

Snively Trust, and it seems clear under Florida law that those assets were vested in John as trustee of the Snively Trust. See *Whetstone v. Coslick*, 117 Fla. 203, 157 So. 666 (1934); *Elvins* v. *Seestedt*, 148 Fla. 408; 4 So. 2d 532 (1941).

We, therefore, conclude that the sale was made by a corporation to a valid trust under the laws of the State of Florida, and that since section 24 (b) (1) (B) relates to sales between an individual and a corporation, the instant sale to a trust is not encompassed therein and the loss should have been allowed. That this result is the proper one to reach is buttressed by the fact that, where Congress intended to disallow losses in transactions where a trust is a party, it did so expressly. In subparagraphs (D), (E), and (F) of section 24 (b) (1), the Code disallows losses on a sale between a grantor and a fiduciary of any trust; or between the fiduciary of a trust and the fiduciary of another trust, if the same person is a grantor with respect to each trust; or between a fiduciary of a trust and a beneficiary of such trust. If Congress had intended that section 24 (b) should apply to transactions between a trust and a corporation, we think it would have made specific provision therefor as it did in the various subparagraphs just referred to relating to other transactions by a trust.

In concluding that the loss should have been allowed, we follow the rationale in our holding in *Charles B. Bohn*, 43 B. T. A. 953 (1941). There we held that the grantor of a trust for the benefit of his daughter could take a loss on a bona fide sale of stock by him to the trust. It is true that the Code now prohibits the deduction of such a loss, but what we said under the state of the law in that case is equally applicable here. We said there, at page 957:

The sale here was not between father and daughter, but between father and trustee for daughter. The daughter would not come into full legal possession of the stock until the termination of the trust, and even then her estate might be defeated by her prior decease. No powers over the trust corpus were retained by petitioner, hence rendering inapposite *Helvering* v. *Clifford*, 309 U. S. 331. To hold that the transaction falls within section 24 (a) (6) is to read something into an ambiguous statute which is not there, in an attempted clarification *ad hoc*.

Respondent relies on the *Estate of Charles C. Ingalls, supra*, stating, in substance that the rationale in that case suggests that section 24 (b) (2) (A) is applicable to determine ownership of properties sold and, as a corollary, who participated in the sale as buyer and seller; and that if this is true, there can be no question but that the property involved in this case was bought by members of the family of petitioner, namely, the beneficiaries of the Snively Trust (who were the daughters and grandchildren of petitioner), thus fulfilling the standards of the family rule. In the *Ingalls* case, an estate sold bank

stock to a corporation more than 50 per cent of the outstanding stock of which it owned. We held that the deduction of the loss resulting from such sale was not barred by the provisions of section 24 (b) (1) (B). In arriving at that conclusion, we applied section 24 (b) (2) (A) to determine the indirect owners of the stock sold, and we looked through the estate to determine that the sale was made by a group of individuals, namely, the beneficiaries thereof. We concluded that since no "such individual" owned "more than 50 per centum in value of the outstanding stock" of the purchasing corporation that section 24 (b) (1) did not prohibit the deduction of the loss in question. Thus, the *Ingalls* case was decided on a different set of facts, i. e., the estate owned the stock of the purchasing corporation, and on the application of a different paragraph of the statute, namely, section 24 (b) (2) (A), and is therefore distinguishable.

Our holding on the first issue disposes of issues (2) through (5), inclusive. The parties are agreed that the petitioner is entitled to a net operating loss carry-back if Lake Eloise had a deductible loss on the sale. Whether the sale of the fruit constituted ordinary income and what is its fair market value become moot because, even if we assume that the sale resulted in ordinary income and that the fair market value of the fruit was $222,459.56, Lake Eloise still suffered a net operating loss in fiscal 1944 sufficient, when carried back to 1942 and 1943, to offset its income for those years. Furthermore, whether the sale of the fruit constitutes income to the corporation under the facts of this case has recently been decided against the respondent. *Burrell Groves, Inc.*, 16 T. C. 1163 (1951). Since there is no deficiency due for the year 1944, there can be no penalty for failure to file an excess profits tax return for that year. Nor can petitioner be liable as a transferee since there are no deficiencies or penalty owed by the transferor.

The sixth and last issue involves the question as to whether Lake Eloise overpaid its taxes for the years 1942 and 1943 and whether this Court has jurisdiction in this proceeding to make a determination with respect to such overpayments. The petitioner, by amendment to the petition, asserted that Lake Eloise overpaid its income tax liability for those years and requests a determination as to the amount of such overpayments. He further requests that we determine that proper claims for refund have been filed, and that we enter a decision that such overpayments are due.

The petitioner is here as a transferee of Lake Eloise. We have jurisdiction because of the deficiency determined against Lake Eloise and, in turn, asserted against the petitioner as a transferee. We have held that no deficiency or penalty is due from petitioner as a transferee, and this holding must necessarily conclude the issues properly pre-

sented to us. Our findings show that the Trustee filed claims for refund, but he is not a party to this proceeding. DeHaven, as trustee of the assets of the dissolved Lake Eloise, may be entitled to a refund of any overpayments; but he is not a party to this proceeding either. In a transferee proceeding, this Court has no jurisdiction to determine who is entitled to any overpayment of tax made by the transferor and we must therefore leave the parties where we found them on this issue.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL and RAUM, *JJ.*, dissent.